[S. F. No. 3556.　Department One.—December 9, 1903.]

LEE KENWORTHY, Contestant, Appellant, v. C. I. MAST, Contestee, Respondent.

ELECTION—DELAY IN OPENING POLLS—PRECINCT VOTE NOT INVALIDATED. —A precinct vote is not invalidated entirely merely because of delay in opening the polls, where the officers acted without fraudulent intent, and only one voter appears to have failed of voting by reason of the delay, whose vote could not have changed the result of the election.

ID.—TEST APPLIED TO DEPARTURES FROM LAW.—The true test to be applied to departures from the requirements of the laws regulating the conduct of elections on the proper day and at the proper place, whether the requirements are mandatory or directory, is as to whether or not the particular departure is of such a nature as to make it impossible or extremely difficult to determine, under the circumstances of the case, whether fraud had been committed or anything done which would affect the result.

ID.—PRESUMPTION AS TO POPULATION.—There is no presumption that a township had a population entitling it to two justices of the peace, and where the pleadings of both parties justify it, it will be presumed after judgment that the township by reason of its population was entitled to one justice of the peace.

ID.—DECISION UPON APPEAL—FINDING AGAINST EVIDENCE—NEW TRIAL. —Where a finding of the superior court as to malconduct of the election board was not sustained by the evidence as to one precinct, which was decisive of the election, this court cannot order final judgment, but will order a new trial, in which the court will determine the case in accordance with the views expressed by this court.

APPEAL from a judgment of the Superior Court of Mendocino County.　J. Q. White, Judge.

The facts are stated in the opinion of the court.

Arthur J. Thatcher, and J. C. Ruddock, for Appellant.

Thomas, Pemberton & Thomas, for Respondent.

ANGELLOTTI, J.—This is an election contest.　Contestee had judgment, from which the contestant appeals.　Contestant and contestee were candidates for the office of justice of the peace of Little Lake Township, Mendocino County, at the last general election.　As shown by the official canvass of the

board of supervisors, contestee received two hundred and six-
teen votes and contestant two hundred and twelve votes, and
the former was declared to be elected.  Contestant instituted
this contest, and the hearing before the superior court re-
sulted in showing that he received one hundred and seventy-
three votes and contestee one hundred and sixty-one, which
would have given contestant the office but for the rejection by
the trial court of the entire vote of two precincts, in each of
which contestant had a majority,—to wit, Little Lake Precinct
No. 1, in which he had a majority of ten, and Little Lake Pre-
cinct No. 2, in which he had a majority of fourteen.  Reject-
ing the total vote of these two precincts, the contestee was
elected by twelve votes.  The court found that the officers of
election in the several precincts were not guilty of any mis-
conduct or malconduct (other than the improper counting for
both plaintiff and defendant of certain ballots improperly
marked, which errors were rectified by the court in the re-
count), except that in the rejected precincts  the polls were
not opened by them at six o'clock A. M., as required by the
statute.  As to Little Lake Precinct No. 1, it was found that
the polls were not opened until 8:10 A. M., and as to Little
Lake Precinct No. 2, that the polls were not opened until 7:45
A. M.  It was also found that there was no sufficient cause or
excuse for the failure to open the polls on time in either pre-
cinct.  It was further found that in Little Lake Precinct No.
1 there were two hundred and ninety-five registered voters,
of whom two hundred and thirty-seven deposited their bal-
lots, and that in Little Lake Precinct No. 2 there were one
hundred and eighty registered voters, of whom one hun-
dred and forty-one voted; and further, "that it is not shown
and cannot be determined in either precinct how much or in
what way the total vote, or the relative vote, for the respective
candidates for justice of the peace was affected by this failure
and neglect of the election officers to open the polls at the
proper time."  It is claimed by contestant that the court was
not justified in rejecting the vote of these precincts, and the
findings of fact, in this behalf, are properly attacked by the
specifications of insufficiency of evidence to sustain the same.

If the vote of Little Lake Precinct No. 2 was improperly
rejected, the contestant was elected by a plurality of two.
We are of the opinion that whatever may be said as to the

other precinct, the evidence was not such as to justify the rejection of the vote of Little Lake Precinct No. 2.

It is not intimated that there was any fraud or collusion on the part of the officers of this precinct. The contestee himself testified that he swore in the election board thereof at the hour of 7:15 A. M., and that he did not know of anybody losing his vote by reason of the polls not being opened in time, unless one George Hall failed to vote for that reason. One of the election officers of this precinct testified (and his testimony was uncontradicted in any particular) that he opened the polling-place at six o'clock, and that from that time until the opening of the polls he and at least four others of the election board were continually present; that they were at work putting up the booths and making other preparations for the election. He further testified, without contradiction, "No one offered to vote before we were ready to receive votes. I was there all the time. . . . I do not know of any elector in Little Lake Precinct No. 2 who was deprived of his right to vote by reason of the delay that morning, in opening the polls." This witness further testified positively that the officers were sworn in before seven A. M., and that the proclamation was made earlier than 7:45, but upon these points there is some conflict of testimony. While the testimony shows a delay in opening the polls that intelligent and prompt effort on the part of the officers would have avoided, it is clear therefrom that they acted without fraudulent intent, and the circumstances attending the irregularity were such that it could easily be determined that neither the total vote nor the relative vote for the respective candidates for justice of the peace was affected by the delay, except that possibly one man was caused to lose his vote thereby. The evidence indicates that very few persons were in the neighborhood during the early morning prior to the opening of the polls, and no reason is apparent why it could not be shown to a certainty whether or not any one left without voting. No one except the contestee knew of any such a one, and he could suggest only the name of Hall. Conceding that Hall did fail to vote because of the delay in opening the polls, and, further, that he would have voted for contestee, the result would not be materially affected, for contestant would still have a majority of one.

It is said that the provisions as to time and place of holding an election are mandatory, and that the departure from those requirements was in this case so substantial as to forbid any inquiry as to whether or not any injury resulted. That a literal compliance with the provisions of the law as to the hour of opening the polls is absolutely essential to the validity of the vote of a precinct has never been held in this state, and no good reason can be conceived for so holding. Learned counsel for respondent admit that even the disobedience of a mandatory statute must be liberally construed, and that, if the departure therefrom is slight, and it can easily be determined that no injury resulted therefrom, the vote will not be rejected. It was said by this court in *Atkinson* v. *Lorbeer*, 111 Cal. 419, 421: "Of course, neither the voters nor those voted for have any control over election officers, and to set aside the vote of a precinct, when there was clearly no fraud or any mistake affecting the result, for mere irregularities occasioned by the ignorance or carelessness of election boards would, in many cases, be a patent injustice. Moreover, a construction requiring an exceedingly strict compliance with all statutory provisions might tempt to irregularities contrived for the very purpose of vitiating the vote at a certain polling-place, and as was said in *Whipley* v. *McKune*, 12 Cal. 361, 'might lead to more fraud than it would prevent.' "

On the other hand the election laws should not be so construed as to open the door to future frauds which it is the purpose of those laws to prevent. It is practically impossible to lay down any general rule covering all cases, but we think the true test to be applied to departures from the requirements of the laws relating to the conducting of elections on the proper day and at the proper place, be those requirements called mandatory or directory, is as to whether or not the particular departure is of such a nature as to make it impossible or extremely difficult to determine, under the circumstances of the case, whether fraud had been committed or anything done which would affect the result. If, as was said in, *Atkinson* v. *Lorbeer*, 111 Cal. 419, speaking of a departure from a so-called "directory" provision, it may be easily shown that the departure was not accompanied with fraud or any act affecting the result, and such showing is made, the

vote will not be rejected. If, on the other hand, the departure from the law is so gross as to give rise to a suspicion of fraud or unfairness, and the circumstances are such that in the nature of things no evidence as to the effect thereof could be satisfactory, a court will not enter upon the task of inquiry.

In *Packwood* v. *Brownell,* 121 Cal. 478, it was held by this court, reversing the action of the lower court in rejecting a precinct, that a specification of malconduct as follows, viz.: "That the said board of judges of election . . . did not open the polls at sunrise of said day of election, nor keep the polls open for the length of time required by law," did not sufficiently show malconduct justifying the rejection of the precinct. This decision was reached in the face of the facts shown by the findings of the trial court, that while the polls should have been opened at 6:29 A. M., they were not opened until 8:15 A. M. or 8:30 A. M., and that one qualified elector was deprived of the opportunity to vote by the failure of the board to open the polls earlier. It was said in the opinion in that case that the legislature intended that some margin should be allowed for honest effort to comply with the statute, and did not intend that the vote of any precinct should be invalidated because the polls were not open at the very instant of sunrise. The chief justice, in a concurring opinion, while holding that the requirements as to time and place of holding an election are mandatory, said that time in this connection means the proper day for holding the election, and that a slight delay in opening the polls, explained and excused by the absence of one of the officers and by the necessity of setting up the booth, railings, etc., ought not to disfranchise the voters of a precinct, in the absence of any showing of actual injury. In *People* v. *Prewett,* 124 Cal. 7, 12, where it was contended that a finding that the polls were opened at one o'clock P. M. was not sustained by the evidence, which, it was urged, showed that they were not opened until 1:30 P. M., this court said: "But if the finding had been as appellants contend it should be, it would not affect the judgment, as no one was prevented from voting by the delay, which seems to have been caused by the failure of the inspector and judges to attend, the selection of others, and procuring a box to serve as a ballot-box." The general rule, as stated in McCrary on Elections (sec. 165), is, that in the absence of

a provision in the statute expressly declaring that a failure in this respect shall render the election void, it will be regarded as so far directory only, and that, unless the deviation from the legal hours has affected the result, it will be disregarded; but that if such deviation is great, or even considerable, the presumption will be that it has affected the result, and the burden will be upon him who seeks to uphold the election to show affirmatively that it has not.

If the circumstances are such that this cannot be clearly and satisfactorily shown, the precinct must, of course, be rejected. The cases relied on by the contestee are not against our conclusion in this case. In *Tebbe* v. *Smith*, 108 Cal. 101,[1] the polls of the rejected precinct were not opened until ten o'clock A. M., instead of at 6:31 A. M. In addition to this, the officers adjourned at noon to another place for dinner, taking the ballot-box with them, but leaving all the other materials, including the official unused ballots, in the polling-place. These departures, considered together, were held to be too radical to allow inquiry as to the effect. In *People* v. *Hill*, 125 Cal. 16, the polls in two precincts were closed one hour and six minutes too soon. As suggested by the chief justice in his concurring opinion in *Packwood* v. *Brownell*, 121 Cal. 478, delay in opening the polls is a much less serious irregularity than a premature closing of them. Where, in the latter case, any considerable number of electors have failed to vote, it would be practically impossible to satisfactorily show, under ordinary circumstances, that they would not have voted if the polls had remained open. Be this as it may, there was in that case no suggestion of any attempt to make a showing of absence of injury, and the case was decided upon the bald fact of the premature closing of the polls.

In the case of *People* v. *Seale*, 52 Cal. 71, the notice given of an election to vote a tax stated that the polls would be open only between the hours of one o'clock P. M. and six o'clock P. M., and the polls were in fact kept open only between those hours. The law required the polls to be kept open, at such an election, from sunrise until sunset, and required the notice of election to specify the legal time. There was

[1] 49 Am. St. Rep. 68.

CXLI. Cal.—18

in that case no notice, as required by law, of a legal election to be held, it being a special election to impose a tax, and any election thereunder was necessarily void.

In *Directors etc.* v. *Abila,* 106 Cal. 365, it was held that a premature closing of the polls rendered a bond election nugatory. There was in that case evidently no attempt to show want of injury, as is apparent from a reading of the opinion of the court.

The point is made on this appeal for the first time that the statement of contest was fatally defective, in that it did not appear therefrom that the township was not entitled to two justices of the peace. If it was entitled to two, both contestant and contestee were elected. The law in force (Stats. 1901, p. 686) provided that ''except as otherwise provided in this act, the officers of a township are two justices of the peace . . . and in townships having a population of less than six thousand, there shall be but one justice of the peace.''

This proceeding was apparently maintained, defended, and decided upon the theory that only one justice of the peace was to be elected for Little Lake Township. It is alleged in the statement that contestant received the highest number of votes for said office, and that by reason thereof he was elected thereto, and that the contestee was not elected to said office. The contestee, in his answer, alleges that he received the highest number of votes for said office, and was elected thereto, and, admitting by his failure to deny the allegations of the statement in regard thereto, that he and contestant each had more votes than the only other candidate, denied that contestant was elected to said office or has any right to hold the same. There is no presumption that the township had a population of six thousand or more, or less than six thousand, unless the fact that the total vote for justice of the peace in the township was only four hundred and sixty-five provides a basis for such presumption, and we are justified by the pleadings in assuming after judgment, that the township, by reason of its population, was entitled to only one justice of the peace.

It will be observed that this objection, if applicable at all, can be considered only with reference to the statement of the grounds of contest, for in all other respects the statement literally complies with the requirements of section 1115 of

the Code of Civil Procedure. ''No statement of the grounds of contest will be rejected, nor the proceedings dismissed by any court for want of form, if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which such election is contested.'' (Code Civ. Proc., sec. 1117.)

It is suggested by counsel for contestant that, in the event of a reversal, final judgment should be ordered for him without the necessity of a further hearing in the court below. It has been suggested in several decisions that it is incumbent on the respondent in this class of cases to incorporate his exceptions to the rulings of the court in the bill of exceptions by way of amendment, so that this court may finally determine the matter. His failure to do so would not, in a proper case, prevent this court from making a final disposition of the contest. (See *Farnham* v. *Boland,* 134 Cal. 151; *Patterson* v. *Hanley,* 136 Cal. 265.) We cannot, however, in the face of the finding of the trial court that the election officers were guilty of willful malconduct, and that it is not shown and cannot be determined how much or in what way the vote was affected thereby, order final judgment. That finding, at least so far as Little Lake Precinct No. 2 is concerned, is not, in our opinion, sustained by the evidence. It is unnecessary to discuss the matter of the other rejected precinct, as, in the event of a retrial, the lower court will determine the question as to whether or not it should be rejected, in accordance with the views herein expressed.

The judgment is reversed and the cause remanded.

Shaw, J., and Van Dyke, J., concurred.