Argued October 17, affirmed November 13, sustained on petition for rehearing December 11, 1917.

## LINKS *v.* ANDERSON.

(168 Pac. 605, 1182.)

**Waters and Watercourses—Irrigation Districts—Petition for Organization and Notice—Sufficiency.**

1. Filing of a petition to the County Court proposing the organization of an irrigation district was sufficient to confer jurisdiction, under Laws of 1911, Chapter 223, relating to procedure in such cases, where the notice of date of presentation to the court was attached at the beginning of the petition, although not itself signed, and the petition set out the necessary facts, and an affidavit of a publisher showing proper publication was attached.

Waters and Watercourses—Irrigation Districts—Power of Legislature.

2. The legislature had the power to enact Laws of 1911, Chapter 223, relating to procedure in organization of irrigation districts, and to formulate a method of gaining jurisdiction, and, having provided an opportunity for all persons to be heard, it had the authority to declare that the order of the County Court should be conclusive of the facts found.

Waters and Watercourses—Irrigation Districts—Organization—Review.

3. Where the County Court got jurisdiction by petition and publication, under Laws of 1911, Chapter 223, relating to procedure to organize irrigation districts, defects in such procedure cannot be reviewed in a contest of the election thereunder by those not making any objection in the County Court.

Waters and Watercourses—Irrigation Districts—Organization—Election.

4. An election notice, under Laws of 1911, Chapter 223, relating to procedure for organization of irrigation districts, signed by the clerk of the County Court under seal of and by order of the court, was a proper notice by the court.

Waters and Watercourses—Irrigation Districts—Contest of Election—Illegality of Votes.

5. In contesting an election by a taxpayer, under Laws of 1911, Chapter 223, Section 34, relating to elections in forming irrigation districts, it is necessary to plead and prove ground of disqualification of votes, and that such votes were cast adverse to contesting parties.

Elections—Contests—Absence of Poll-books, Tally Sheets, etc.—Voters.

6. Poll-books, tally sheets, and the list of voters are for the convenience of the election officers, and their absence at an election is not a ground for contest.

Elections—Right to Vote of Person not on List of Voters.

7. The list of voters required at a general election is not conclusive of the right of an elector to vote, as one entitled thereto, on a proper showing, can vote anyway.

Elections—Secrecy of Ballot—Intimidation.

8. That there were no booths at the polls is not a ground for contest of an election, under Laws of 1911, relating to organization of irrigation districts, in the absence of a showing of intimidation or failure to cast a free ballot.

Elections—Irrigation Districts—Posting Results.

9. Posting up results of voting is an after-election duty, which does not affect the true result, and failure to post is not a good ground for contest.

Elections—Contest—Time of Closing Polls.

10. The law requiring polls to be kept open to 8 P. M. is only directory, and avails nothing in the absence of showing that electors

were deprived of the right to vote, and that the number excluded was sufficient to change the result.

**Waters and Watercourses—Irrigation Districts—Election in Organizing.**

11. Where a petition contesting an election, under Laws of 1911, Chapter 223, relating to procedure to organize irrigation districts, did not allege that the directors had failed to contest the election under Section 33, the contest could only cover the substantial fairness of the election under Section 3, and failure of election board to make certificates of the canvass was not before the court.

**Elections—Contest—Best Evidence.**

12. Where an election contest is confined to the substantial fairness of an election and not to the regularity of the canvass, the ballots themselves are the best evidence, and must be put in evidence to show a different result.

**Elections—Contest—Pleading.**

13. To allege in an election contest that certain persons cast illegal ballots is but a conclusion of law.

**Evidence—Presumptions—Performance of Official Duty.**

14. In the absence of pleading or proof in an election contest that certain irregularities changed the result, and nothing to the contrary appearing, it is presumed that official duty has been regularly performed.

### ON PETITION FOR REHEARING.

**Waters and Watercourses—Irrigation Districts—Elections—Notice.**

15. Description in notice of election on proposed irrigation district: "Thence northerly to the northwest corner of the northeast quarter of said section 31; thence easterly to the southwest corner of the southeast quarter of section 29, said township and range; thence northerly to the northeast corner of the southwest quarter of the southeast quarter of said section 29; thence easterly to the southwest corner of the northwest quarter of the southwest quarter of section 26 in said township and range"—is not indefinite or vague merely because the order read "northwest" where the notice in italics reads "northeast," so that the notice includes more territory than the order.

**Waters and Watercourses—Irrigation Districts—Elections—Notice.**

16. Since the courts under specific provisions of Laws of 1911, page 403, Section 35, must disregard any error, irregularity, informality or omission which does not injuriously affect the substantial rights of the parties to proceeding to establish irrigation district, error, if any, in description of proposed irrigation district's territory in the notice of election by which land not intended to be included was described gave the owners of other land in the district no ground for complaint, especially after the election was held and they participated therein.

From Jefferson: T. E. J. DUFFY, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is a proceeding to contest an election by what the plaintiffs term their amended notice of contest which states, in substance, that an election was held in certain precincts named in Jefferson County, March 20, 1916, for the purpose of organizing the North Unit Irrigation District in that county and for the election of five directors and a treasurer thereof. It is said also in that document in purport that at the election there was submitted to the voters voting thereat the question of the organization and formation of the district; that the ballots cast contained the words "Irrigation District—Yes" and "Irrigation District—No,". together with the names of the defendants as candidates for directors and treasurer; that the County Court of that county pretending to act as a board of canvassers canvassed the returns of the vote and declared as a result that the district was organized and the defendants elected. The plaintiffs aver that each of them owns property within the district liable to assessment; that they were legal electors on the day of the election and voted against the organization of the district. They contend that the County Court did not acquire any jurisdiction to order the election; that no notice of the time of presenting the petition was ever signed and published by the petitioners; that when considering the petition the court took no evidence about the genuineness of the signatures to the same, but made an order that a notice of election be given by the county clerk and published once each week for at least four successive weeks that the election should be held on March 20, 1916, at which the polls should be opened in each of the voting precincts from 8 o'clock in the morning until 5 o'clock in the afternoon.

Further objections to the regularity of the proceedings are urged in the initial pleading. Restating their case as an additional cause of contest, they urge that no list of voters was furnished to the judges and clerks of the election, and that without requiring any evidence whatsoever that they were legal voters several persons named voted in the several precincts having then no legal right to vote. It is alleged that the number of these illegal votes was sufficient to entirely change the result of the election.

The various orders of the County Court and the election notice are admitted by the answer, but the allegations about the irregularity of the proceeding are denied. That pleading avers a history of the initiation, progress and culmination of the organization of the district in detail, claiming that the same is regular in every respect. The Circuit Court made findings of fact, conclusions of law, and a decree to the effect that plaintiffs take nothing by reason of their complaint and decreed the district to be regularly established. The plaintiffs appeal.          AFFIRMED.

For appellants there was a brief over the names of *Mr. Claude McColloch* and *Mr. W. P. Myers,* with an oral argument by *Mr. McColloch.*

For respondents there was a brief over the names of *Mr. William H. Wilson, Mr. Lewis H. Irving* and *Mr. Jos. T. Hinkle,* with oral arguments by *Mr. Wilson* and *Mr. Irving.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The proceeding was carried on under Chapter 223 of the Laws of 1911, as it stood prior to its repeal by

the act of February 21, 1917. The legislation of 1911 declares that:

"Whenever fifty, or a majority of the holders of title to lands susceptible of irrigation * * desire to provide for the irrigation of the same, they may propose the organization of an irrigation district": Chapter 223, Laws 1911, § 1.

Section 2 of that act reads in part:

"For the purpose of organizing an irrigation district as provided by this act, a petition, signed by the required number of holders of title to the lands within the boundaries of such proposed irrigation district, shall be presented to the County Court of the county in which the land, or the greatest portion thereof, is situated."

A particular description of the boundaries of the district is required, together with a bond to be approved by the County Court in double the amount of the probable cost of organization, conditioned to pay that expense in case organization be not effected. It is required that the petition shall be presented at a regular meeting of the court or at any special meeting called to consider the same and

"shall be published once each week for at least four successive weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where said petition is presented, together with a notice stating the time of the meeting at which the petition will be presented."

It is further said in this section:

"When such petition is presented, the County Court shall hear the same and may adjourn such hearing from time to time, not exceeding four weeks in all, and on the final hearing may make such changes in the proposed boundaries as the court may find proper, and shall establish and define such boundaries. * *

86 Or.—33

On the final hearing the court shall make and enter an order determining whether the requisite number of owners of the land within such proposed district shall have petitioned for the formation thereof and whether the petition, and notice of the time of presentation thereof, shall have been duly published as hereinbefore provided, and said order as so made and entered shall be conclusive evidence of the facts found by the court."

This is the formula for acquiring jurisdiction in the matter and giving authority to the County Court to proceed and hear the petition with a view to ordering an election. We find in the record a document in this tenor:

"Notice is hereby given by the undersigned petitioners, whose names are signed to the following and attached petition, and who are a majority of the holders of title to lands susceptible of irrigation from a common source, which lie within the proposed North Unit Irrigation District as described in said petition hereto attached, that said petition will be presented to the County Court of Jefferson County, Oregon, on the 7th day of February, 1916, at the hour of 10 o'clock in the forenoon of said day or as soon thereafter as said court can attend to the same, at the county courthouse of said county, said date being the time fixed by said court for the presentation and hearing of said petition. This notice is published once each week for the period of four weeks, the publication for the first time being the 6th day of January, 1916. Said petition is as follows:

"In the County Court of the State of Oregon for Jefferson County.

"Petition for Organization of Irrigation District.

"To the Honorable, the County Court of Jefferson County, Oregon.

"We, the undersigned petitioners, respectfully show and state to the court: That all of the land included in the hereinafter bounded and described irrigation

district, and the proposed district, lies entirely within the county of Jefferson, State of Oregon.

"That we, the undersigned, are owners of land and holders of title to land within the proposed and described district, and that we are a majority of the holders of title and of evidence of title to lands situated within the hereinafter described boundaries, and intended to be included in said proposed district, which lands are susceptible of irrigation within said proposed boundary from a common and combined source and by the same system of works from which the lands will be irrigated in said described district."

The paper further states the proposed name of the district, the number of directors, and the source of water supply, and attached a list of the names of all owners and holders of title to land within the proposed district whose lands are susceptible of irrigation. It also gives the proposed boundaries of the district according to legal subdivisions and prays that the court take the proper action looking to the establishment thereof. Appended to this as signatures are the names of a large number of persons greatly in excess of fifty. Attached to this instrument is the affidavit of O. C. Young, as follows:

"State of Oregon,
    County of Jefferson,—ss.

"I, O. C. Young, being first duly sworn, say that I am the printer and publisher of the Deschutes Valley Tribune, that said Deschutes Valley Tribune is a weekly newspaper published and issued weekly and regularly at Culver, Oregon, in the county of Jefferson and is of general circulation in said county and state. That the notice of which the one hereto attached is a true and correct copy, was published in the regular and entire issue of every number of said paper, once a week for five weeks being published five times, on dates as follows, viz.: January 6th, 13th, 20th, 27th, and February 3d, 1916; that said notice

was published in the newspaper proper and not in a
supplement; that I have carefully compared the copy
of the petition as published with the original petition
filed in the county court for Jefferson County, Ore-
gon, and that the copy published in said newspaper is
a true and correct copy of said original petition and
of the whole thereof.

"(Signed)  O. C. YOUNG."

1-3. This affidavit is subscribed and sworn to before
a notary public.  This proof having been filed in the
County Court was sufficient to give the court jurisdic-
tion to proceed.  It is in the nature of process giving
foundation to the authority of that tribunal.  It gave
to all persons interested notice of a matter which they
were called upon to oppose.  It afforded them their
day in court.  It behooved them, if they had aught to
say against the enterprise to appear in the County
Court and resist the same as they were advised.  Hav-
ing acquired the right to act, thenceforward it was for
the County Court a matter of procedure.  In this
election contest we are not necessarily concerned about
the jurisdiction of the County Court further than to
inquire if it had authority to order the election.  The
legislature was clothed with power to enact a law
formulating a method of gaining jurisdiction and hav-
ing thereby provided an opportunity for all persons
to be heard, giving them their day in court, it had the
still further authority to declare the effect of the order
of the County Court which in this instance it is said
shall be conclusive of the facts found by the court.  In
the record before us there is presented no objection to
jurisdiction in the proceedings culminating in the
order for election which could not have been and which
ought to have been urged in the County Court at the
hearing of the petition for an election.  As against

them, therefore, so far as this proceeding is concerned, we hold that the County Court acquired jurisdiction to make the order and that it is final.

4–9. It is contended that because the notice of election was signed by the county clerk it is not sufficient because the statute says "said County Court shall forthwith give notice of an election to be held in such proposed district." The order in question directs "that the clerk of this court be and he is hereby directed to forthwith give notice of said election to be held in such proposed district for the purpose of determining whether or not the same shall be organized." As appears from the record the notice itself declares it "to be pursuant to an order of the County Court of Jefferson County, Oregon, made and entered on the 8th day of February, 1916, and is dated and the seal of said court is affixed hereto this 9th day of February, 1916, signed W. E. Johnson, County Clerk of Jefferson County, Oregon." This is a sufficient fulfillment of the provision requiring the County Court to give notice of the election.

At this point it is proper to inquire concerning the different kinds of attack that may be made upon proceedings of this nature. We find in Section 3 of Chapter 223, *supra,* treating of the election in such cases, the following language:

"Such election, on organization, may be contested by any person owning property within the proposed district liable to assessment. The directors elected at such election shall be made parties defendant. Such contest shall be brought in the Circuit Court of the county where the petition for organization is filed. * * The court having jurisdiction shall speedily try such contest, and determine, upon the hearing, whether the election was fairly conducted and in substantial compliance with the requirements of this act, and enter its judgment accordingly."

It is said in Section 33 of Chapter 223:

"The board of directors, may, within the time here-inafter limited, after the order of the County Court declaring the organization of any irrigation district hereunder, or declaring the result of any election here-under, or after the order of the board of directors of such irrigation district including or· excluding any lands in or from said district or declaring the result of any election, general or special, herein provided for or after any order of such board of directors levying any assessment, general or special, or ordering the issue of any bond for any purpose hereunder, or after the order determining any bond issued or providing for the same, or after such bond issue, bring a pro-ceeding in the Circuit Court of the county in which the district, or the larger portion thereof, is situated for the purpose of determining the validity of any of the acts or things in this section above enumerated."

Provision is made for acquiring jurisdiction by pub-lication of summons and the like and giving opportu-nity to be heard to any person interested, together with the right of appeal. Section 34 says:

"If any such proceedings, as enumerated in Sec-tion 33 of this act, shall not have been brought by the board of directors within thirty days after the entry of the order or performance of any acts in said Sec-tion 33 enumerated, and for which a contest is by said section provided, then any district assessment-payer or other interested person may bring a like proceed-ing in the Circuit Court of the county where the lands embraced within such district, or the majority thereof, are situated, to determine the validity of any· of the acts, orders, or things enumerated in said Section 33, and concerning which the right of contest is by said section given."

Thus it is that there are two methods of attack upon the transactions involved in the organization of an irrigation district: 1. A proceeding by the directors

in the Circuit Court to test the efficacy of any of the matters enumerated in Section 33; and 2. A like proceeding at the instance of an assessment-payer which last is authorized only if the directors fail to take action within the time limited.

It. will be observed that in the proceedings mentioned in Sections 33 and 34, the board of directors has the first right within thirty days to bring a suit to contest the validity of the various things mentioned. Under Section 34 the assessment-payer or other interested person has the right to institute the proceedings if the board has not acted. In the present instance there is no statement anywhere that the board has not taken the initiative. It professes to be nothing more than an election contest. Indeed, it says expressly that an election was held for the purpose of voting on the question of organization. The very language of the initial pleading indicates *prima facie* regularity of the holding of the election. Under Section 3 of Chapter 223, the limit of the authority of the court in such a contest is to determine upon the hearing whether the election was fairly conducted and in substantial compliance with the requirements of the act. We have seen that the County Court acquired jurisdiction to order an election and that it did order the same and gave notice thereof. The plaintiffs have taken upon themselves the burden of contesting the election. It is incumbent upon them, therefore, to show not only that illegal votes were cast but also wherein they would have affected the result adversely to the plaintiffs. They state in effect that many persons were allowed to vote at the election without being legal voters, but they give no intimation about the nature of their disqualification. Neither is it stated whether these illegal votes were cast for or against the scheme

of organization. For aught that appears every illegal vote was cast against the organization. Under such circumstances the plaintiffs cannot complain for it is manifest that the result would not be affected. They allege that no poll-books for the election were furnished to the election officers suitable for the purpose but that the books supplied were for primary nomination election and that the ballot sheets furnished were such as are properly used for a general election; that no list of electors was furnished; that no proper voting places or booths were used to secure the secrecy of the ballot and that the judges and clerks failed to post up a statement of the result of the election after the polls were closed. The poll-books, tally sheets, and the list of voters are for the convenience of the election officers. The list of voters required to be furnished at a general election is not conclusive of the right of an elector to vote. If he is otherwise entitled to the franchise, provision is made for the reception of his vote on what is known as blank A authorizing the judges to receive his ballot when a certain number of householders testify as to his qualification to vote. No showing is made in the case that anybody was intimidated or failed to cast a free ballot because of the lack of secrecy at the polls. The posting up of the results of the voting is an after-election duty which does not affect the true result and no effect can be given here to the failure of the judges and clerks in this respect.

10. It is complained that the election officers kept the polls open only from 8 o'clock in the morning until 5 in the afternoon whereas the general election law requires them to be kept open from 8 o'clock in the morning until 8 o'clock in the evening. This, however, is directory only and avails nothing unless it can be

shown that some elector was thereby deprived of the right to vote and that the number thus excluded was sufficient to change the result: 15 Cyc. 364; 9 R. C. L., p. 1108.

11-14. It is said also that the judges and clerks of the election and all of them failed and neglected to make or sign any certificate upon the ballot sheets certifying to the number of votes cast at the election for "Irrigation District—Yes" or "Irrigation District—No." We might give consideration to this contention if this were a proceeding under Sections 33 and 34, *supra.* The election is what is contested and not the canvass of the election. We are called upon to examine the election which as we have seen was properly ordered and we are not in the present instance reviewing the action of the County Court as a canvassing board. We are taught in *Hartman* v. *Young,* 17 Or. 150 (20 Pac. 17, 11 Am. St. Rep. 787, 2 L. R. A. 596), that it is a primary rule of elections that the ballots constitute the best and original evidence of the intention and choice of the voters. We have for consideration the action of the electors in casting their ballots in the election. It is not a question of whether the officers correctly reported the result of the action of the voters. In contesting this election it is incumbent upon those who assail it to show some lack of fairness after jurisdiction has attached upon proper notice and point out wherein the fault would affect the result before they can take anything in such a proceeding. To say that illegal votes were cast even by certain persons, is but a conclusion of law. Furthermore it avails nothing to say that such votes were received without showing on which side of the question they were cast so as to enable the court to determine whether the result would have been affected.

The case of the plaintiffs is defective in allegation. It is also faulty in proof in that the ballots as actually cast, being the best evidence of the will of the people, are not before us. On both pleading and proof the plaintiffs must fail in this proceeding. The Circuit Court has examined the matter and has determined that the election was fairly conducted. In the absence of any showing either by pleading or proof that the result would have been different on an actual count of the ballots cast and nothing to the contrary appearing, the presumption that official duty has been regularly performed by the officers of the election would support the proceeding. So far as the dismissal of the plaintiffs' petition is concerned the decree of the Circuit Court must be affirmed.

AFFIRMED. SUSTAINED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

---

Former opinion sustained December 11, 1917.

PETITION FOR REHEARING.

(168 Pac. 1182.)

On petition for rehearing. Former opinion sustained.

*Mr. Claude McColloch* and *Mr. W. P. Myers,* for the petition.

*Mr. William H. Wilson, Mr. Lewis H. Irving,* and *Mr. Jos. T. Hinkle, contra.*

Department 1. MR. JUSTICE BURNETT delivered the opinion of the court.

The petition for rehearing in this cause urges upon us that the notice of election was too vague and indefinite to authorize one to be held. The particular point relied upon is that in describing the perimeter of the proposed irrigation district there is a difference between the language of the order for the election and of the notice thereof. So far as material on that subject the following extracts from the two documents are sufficient for present purposes. After stating the beginning point and giving various courses and distances the order proceeds thus:

"Thence northerly to the northwest corner of the northeast quarter of said section 31; thence easterly to the southwest corner of the southeast quarter of section 29, said township and range; thence northerly to the *northwest* corner of the southwest quarter of the southeast quarter of said section 29; thence easterly to the southwest corner of the northwest quarter of the southwest quarter of section 26 in said township and range."

In describing that part of the boundary the notice says:

"Thence northerly to the northwest corner of the northeast quarter of said section 31; thence easterly to the southwest corner of the southeast quarter of section 29, said township and range; thence northerly to the *northeast* corner of the southwest quarter of the southeast quarter of said section 29; thence easterly to the southwest corner of the northwest quarter of the southwest quarter of section 26 in said township and range."

15, 16. The fault imputed to the notice is that when the description going around the proposed district arrived at the southwest corner of that 40-acre tract

known as the southwest quarter of the southeast quarter of section 29, it did not run along its west boundary to the *northwest* corner thereof, as stated in the order, but went diagonally across the tract to the *northeast* corner and thence followed easterly the boundary line mentioned in the order for the election. A wayfaring man reading the notice of the election would observe that the boundary line described therein inclosed a body of land. If he took the trouble to compare the description in the notice with that in the order he would discover that the notice included all the land mentioned in the order and twenty acres besides, being the triangular northwest half of the "forty." The notice is neither vague nor indefinite. It is as precise as reference to government surveys and legal subdivisions can make it. The complainants do not assert any interest in the extra twenty acres thus included. The case they present in this connection is analogous to that in *Birnie* v. *La Grande,* 78 Or. 531, 153 Pac. 415, where the plaintiff was combating a street assessment because some nonabutting property, and hence nonassessable, but in which he had no interest, was included in the taxation district. Mr. Justice BEAN thus disposed of that contention:

"It does not necessarily follow, however, that, if perchance, a lot not so abutting should by mistake or otherwise be included in one assessment, the levy would be void as to the contiguous property; in other words the party whose realty is not benefited should complain, if any one, and not those who are uninjured."

Remembering, as we must, that this is a contest of an election, and recalling the rule laid down in the statutes under which the proceeding was carried on to the effect that the courts "must disregard any error, ir-

regularity, informality, or omission which does not injuriously affect the substantial rights of the parties to said proceeding," we are constrained to hold that the error, if any, does not militate against any right of the petitioners here: Laws 1911, c. 223, p. 378, § 35. Indeed, they expressly declare in their petition that an election was held; that they are legal electors and the owners of property within the proposed irrigation district which is liable to assessment therefor; and that they each voted at the election. It is not apparent how an election could be held under a void notice or how their property could be included in a void description.

As against the objections presented and as against the parties urging them there was no material error in the proceedings. We adhere to the former opinion.

FORMER OPINION SUSTAINED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.