ROY WILLIAMS, F. L. Beals, Olive D. Beals and M. J. Fullerton, appellants, v. PERCY V. SHERWOOD, R. O. Kraft and Gordon W. Randlett, Individually and as Members of the Board of Trustees of the Village of North Fargo, Charles E. Finkle and Frank A. Phillips, Individually and as Treasurer and Clerk Respectively of the Village of North Fargo and the City of Fargo, a Municipal Corporation, Respondents.

(200 N. W. 782.)

**Municipal corporations — general rule as to effect on village election for dissolution, of deviation from statutory hours for opening or closing of polls.**

1. A deviation from the hours fixed in a statute for opening or closing the polls in a village election will not ordinarily render an election invalid, in the absence of a showing of fraud, prejudice to qualified electors, or of a statute expressly declaring that the election shall be void as a result of such departure.

Note—(2) Deviation from time for opening or closing polls, see 9 R. C. L. 1107; 2 R. C. L. Supp. 926.

Municipal corporations — deviation from statutory hours for opening and closing polls held not to invalidate election; evidence held to show that result of election was not affected by deviation from hours fixed by statute for opening and closing polls.

2. Where, in a village election, the polls were kept open from 1 P. M. to 7 P. M., instead of from 9 A. M. to 4 P. M., as provided by statute, and there was no proof of fraud, and the evidence shows no prejudice to qualified electors as a result, and the statute does not declare an election void as a result of a departure from the statutory hours, it is held, for reasons stated in the opinion, that the election is valid.

Opinion filed September 13, 1924.

Elections, 20 C. J. § 209 p. 173 n. 34, 35 New, 37 New. Estoppel, 21 C. J. § 193 p. 1192 n. 20. Mandamus, 38 C. J. § 326 p. 726 n. 39.

Appeal from the District Court of Cass County, North Dakota, *Cole, J.*

Modified and affirmed.

*J. E. Hendrickson,* for appellants.

If the departure from the provisions of the statute in regard to the opening and closing of polls is such that it must be deemed to have affected the result, the election is invalid, as for instance, where delay in opening the polls prevented some electors from voting or uncertainty exists as to the number of votes cast after the polls should have been closed. 20 C. J. 174; O'Neill v. Barth, 102 S. W. 263; School v. Bell, 125 Ky. 750, 102 S. W. 248.

The courts are powerless to infuse any legal life into it, however disposed they may be in the absence of fraud to give effect to elections where possible. Refining Co. v. Police Jury, 115 La. 1019, 40 So. 443.

The opening of the polls three hours later than the time prescribed by statute, and the removal of the ballot box from the polls in violation of Political Code Sec. 1160 invalidated the election in that precinct although the misconduct is prompted merely by ignorance and lack of appreciation by the election officers of the responsibility of their positions. Tebbs v. Smith, 108 Cal. 101, 41 Pac. 454.

*Lawrence, Murphy & Nilles,* for respondent.

The proper test for distinguishing mandatory from directory provisions in election laws is well stated by the supreme court of Indiana

in Parvin v. Wimberg, 130 Ind. 568, 15 L.R.A. 775, 30 Am. St. Rep. 254, 30 N. E. 790, as follows: "If a statute expressly declares any particular act to be essential to the validity of an election, or that its omission shall render the election void, the courts, whose duty it is to enforce the law as they find it, must so hold, whether the particular act in question goes to the merits or effects the result of the election or not; for such a statute is mandatory, and the court cannot enter into the question of its policy. On the other hand, if a statute simply provides that certain things shall be done within a particular time or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, they will be regarded as mandatory if they affect the merits of the election, and as directory only if they do not affect its merits."

On the same subject the Supreme Court of Missouri in Bowers v. Smith, 111 Mo. 45, 16 L.R.A. 754, 33 Am. St. Rep. 491, 20 S. W. 101, said: "If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. But, strictly speaking, all provisions of such laws are mandatory in the sense that they impose the duty of obedience on those who come within their purview. But it does not, therefore, follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish." Perry v. Hackney, 11 N. D. 149, 90 N. W. 483; State ex rel. Byrne v. Wilcox, 11 N. D. 329, 91 N. W. 955; Tuntland v. Noble (S. D.) 138 N. W. 291; Kerlin v. Devils Lake, 25 N. D. 207, 141 N. W. 756; State ex rel. Walkin v. Shanks, 25 S. D. 55, 125 N. W. 122.

A statute prescribing the duties of election officers may be held either mandatory or directory according to the time and manner in which it is questioned. Before election it is mandatory if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential

element of the election, or it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void. 20 C. J. p. 182. Blue v. Allee, 184 Ind. 302, 111 N. E. 185; Jones v. State, 153 Ind. 440, 55 N. E. 229; State v. Lockwood, 181 Iowa, 1233, 165 N. W. 330.

The general rule is that statutory provisions as to the time of opening and closing the polls are so far directory that the election is not vitiated by an irregularity in this respect which does not deprive a legal voter of his vote or admit a disqualified person to vote. 20 C. J. p. 173.

Thus an election will not be vitiated because the polls were kept open after the hour fixed for closing in the absence of evidence that any votes were cast after that hour. Soper v. Sibley County, 46 Minn. 274, 48 N. W. 1112.

It is complained that the election officers kept the polls open only from 8 o'clock in the morning until 5 in the afternoon, whereas the general election law requires them to be kept open from 8 o'clock in the morning until 8 o'clock in the evening. This however is directory only and avails nothing, unless it can be shown that some elector was thereby deprived of the right to vote, and that the number thus excluded was sufficient to change the result. 15 Cyc. 364; 9 R. C. L. 1108.

No error can be predicated upon the time allotted the voters to express their preference. It is the shortening rather than the lengthening of the hours that will impair the rights of a voter and for that account vitiate an election otherwise legal. Parker v. Clatsop Co. 69 Or. 62, 138 Pac. 239.

The general rule is that statutory provisions as to the time of opening and closing the polls are so far directory that the election is not vitiated by an irregularity in this respect which does not deprive a legal voter of his vote or admit a disqualified person to vote. 20 C. J. § 209, p. 173.

Thus a delay of less than one hour in opening the polls, caused by the failure of the inspectors originally appointed to appear, necessitating the selection of others in their stead, will not avoid an election, where it is shown that only one person was prevented from voting

by the delay, and it is not shown that his vote would have changed the result. Pickett v. Russell, 42 Fla. 116, 634, 28 So. 764, 772.

Two independent municipal subdivisions of the State cannot exercise the same power in the same district at the same time. There cannot be two corporations with co-extensive jurisdiction attempting to exercise the same power, neither can there be two distinct municipal corporations with the same privileges and authority, governing the same district at the same time. Taylor v. Ft. Wayne, 47 Ind. 280; People ex rel. Hawthorne v. Morrow, 18 Ill. 315, 54 N. W. 834; Independent Dist. v. Sioux County, 41 Iowa, 658, 2 N. E. 57.

JOHNSON, J. This is an action to enjoin defendants from perfecting proceedings for the annexation of the village of North Fargo to the City of Fargo, pursuant to an election for the dissolution of the village, held on April 30, 1923, at which the vote stood 99 for dissolution and 93 against. Plaintiffs contend that the election is void for the reason that the polls were kept open from 1 P. M. to 7 P. M. instead of from 9 A. M. to 4 P. M., which latter hours, it is said, are prescribed by the statute. This is the main issue in this lawsuit.

The case was first heard on April 2, 1924; in that hearing the trial court made findings of facts, among them being a finding that the polls were open on election day from 9 A. M. to 7 P. M. After the case had been appealed to this court it was sent back, upon the suggestion of amici curiæ, and certain residents of the village of North Fargo were permitted to file a petition and complaint in intervention more fully contesting the validity of the election. More testimony was accordingly taken on May 16, mostly upon the questions as to the hours when the polls were open and as to whether any voters were in fact prejudiced or prevented from voting because of the alleged departure from the statutory hours. The trial court made additional findings. The trial court finds "that the additional testimony offered is not such as to warrant any modification of the original findings of fact, conclusions of law, order for judgment, or judgment entered therein."

Upon the second hearing all the election officers testified unequivocally that the polls were in fact not opened until 1 P. M. on April 30, 1923. The testimony to the contrary at the first hearing was rather

indefinite. We are constrained to the conclusion that if the trial court intends to adhere to its first finding on this point, its conclusion is opposed to the great preponderance of the evidence. The court says later, in its findings upon the second hearing: "The election officials did not assemble nor were any votes cast at such election until on or about one o'clock P. M. of election day . . .," a finding that may very properly be construed as contrary to that made on the first hearing, if not, indeed, conflicting with the statement from the new findings first above quoted.

The court also found that only two persons presented themselves at the polling place in the forenoon; that those two actually voted in the afternoon; that no voters were prejudiced or prevented from voting at the election because the polls were not open in the forenoon; and in general that the election was fairly conducted, without fraud, the result correctly announced, and the voters of the village of North Fargo were not in any manner deprived of or prejudiced in the exercise of the franchise by reason of the fact that the polls were open from 1 P. M. to 7 P. M. instead of from 9 A. M. to 4 P. M. The court also found that the result of the election would not have been different had the polls been open from 9 A. M. to 4 P. M. instead of from 1 P. M. to 7 P. M.

The foregoing findings are amply supported by the testimony. One Clark, at whose home the polling place was, testified that only two voters came in the forenoon and that both of them voted in the afternoon. His daughter testified to the same effect. Both witnesses were opposed to annexation, and Clark was a trustee of the village at the time of the election, being president of the village board.

The testimony tends to show that some days after the election of April 30, 1923, the president of the village announced that the election was invalid because the polls were not kept open during the hours prescribed by law. The election notices stated the hours for voting as from 1 P. M. to 7 P. M. Thereupon those who favored dissolution and annexation to the city of Fargo circulated new petitions asking that another election be called, but the president of the village board and another trustee refused to, or at least did not call an election. The majority of the board of trustees of the village declined to take any action on the petitions, according to the testimony of the third member

who favored the calling of another election in order to correct any irregularities in that of April 30. No return of the results of the election was filed by the village board. The alleged irregularity with respect to the opening and closing of the polls was not a sufficient legal excuse for a refusal to declare the result. 26 Cyc. 275; People ex rel. Theis v. Michaels, 160 Ill. App. 424, 427. It was the duty of the village president and the village clerk to file a statement of the result, as provided in § 3903, Comp. Laws, 1913.

The battle of the annexationists and the anti-annexationists apparently continued with unabated vigor until March 18, 1924, when a new village board was elected by a substantial majority, consisting entirely of friends of annexation to Fargo. After the election the city of Fargo proceeded to annex the territory comprised within the former village of North Fargo.

Plaintiff's Exhibit 1, containing 29 names, purports to be a list of persons who resided in the village on April 30, 1923, but who did not vote at that election. Nobody testified to all the facts necessary to show that these persons were *qualified* electors; nobody testified that they did not vote because the polls were not open in the forenoon; nobody testified as to which side of the controversy they favored. The defendants were not permitted to offer any evidence upon the second hearing, at which Exhibit 1 was introduced, the trial court having construed the order of this court as limiting the right to introduce new testimony to the intervenors. Exhibits 2 and 3 show that on March 18, 1924, there were 216 votes cast in the village, being 24 more than were cast at the dissolution election. It is somewhat significant that at the March election the anti-annexationists were defeated by majorities ranging from 24 to 32 votes; the issue in that campaign according to the testimony, was immediate annexation to Fargo and not the personalties of the candidates; of the 216 ballots, 211 were straight ballots, for all those who favored annexation, or for all those opposed to it. With a full vote out and the issue the same, the anti-annexationists were more decisively defeated in 1924 than in 1923. Indeed, Exhibit 3 shows that the candidates of the anti-annexationists for village trustees in the March election received 92, 93 and 94 votes. Against dissolution on April 30, 1923, 93 votes were cast. Witnesses for intervenors

testify that the vote at the dissolution election was the largest cast in the village up to that time.

Only three persons explained, on the second hearing, why they did not vote; one did not know that there was an election; two could not leave the children and of those two one was opposed and the other favored annexation.

On the whole record, the testimony abundantly supports the findings of the trial court that there was no prejudice and that the result of the election would not have been different had the polls been open in the forenoon. The polls were open only one hour less than the statute provides. Nobody tried to vote after 7 P. M. In Links v. Anderson, 86 Or. 508, 168 Pac. 605, 1182, the polls were closed three hours ahead of the statutory hour for closing, but the court refused to hold the election invalid on that account, in the absence of fraud or prejudice. If any substantial number of those listed on Exhibit 1 had been opposed to annexation, and had been prevented from voting because of the departure from the regular hours, it is fair to suppose that they would have been called to testify by the intervenors. The names of some of them, including the address, are recorded in Exhibits 2 and 3 (The poll books) as voting on March 18, 1924, and these exhibits were introduced by the intervenors.

While the principal contention is that the election of April 30, 1923, was invalid, it is also urged that the plaintiffs are estopped from asserting the validity of the election inasmuch as they acquiesced in the announcement of the president of the board as to the invalidity of the election and thereafter participated in an election—March 18, 1924—of village officers. We do not believe it necessary to discuss this question at length. It seems that the entire village board was opposed to annexation at the time of the dissolution election, except one Randlett who thereafter resigned because, as he says, the majority would take no action on the new election petitions. Seemingly, nothing could be done until there was a new board; a new board was elected on March 18, 1924, whereupon, it seems, annexation proceedings were continued. The old board had not complied with the statute requiring the filing of a statement of the result of the election; it seems they either refused or neglected to act. No estoppel could arise, on elementary principles, under the facts in the record. See 21 C. J. 1191, ff.

The controversy growing out of the attempt to annex the village of North Fargo to the City of Fargo has twice been in this court. See North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977; Phillips v. Johnson, 50 N. D. 781, 197 N. W. 879.

Section 3903, Comp. Laws, 1913: "When an application signed by one-third of the legal voters of any incorporated village shall be presented to the board of trustees in writing asking for a dissolution of the corporation setting forth the reasons therefor, it shall be competent for the board if it deems the reasons good to call a meeting of the voters of such village by giving ten days' notice thereof as provided in this chapter, to determine whether such corporation shall be dissolved. The board of trustees shall preside at such meeting and the polls shall be opened as at other elections, and the voters shall vote by ballot, 'yes' or 'no.' If a majority of all the votes given shall have thereon the word 'yes,' and such votes shall have been given by two-fifths of all the legal voters in such village, a statement of the vote signed by the president and attested by the clerk shall be filed in the office of the register of deeds of the county, and such village shall at the expiration of six months from the time of holding such meeting cease to be a corporation, and the property belonging to such corporation after the payment of its debts and liabilities shall be disposed of in such manner as a majority of the voters of such village at any special meeting thereof may direct."

No statement of the vote was filed until the new village board qualified after the election of March 18, 1924. No time is prescribed within which this statement must be filed. We cannot say, as a matter of law, that it was filed too late.

Section 3846, Comp. Laws, 1913, reads as follows:

"At the meeting of the qualified voters as herein provided the polls shall be opened at nine o'clock in the forenoon of such day and shall be kept open until four o'clock in the afternoon, when they shall be closed."

In Kerlin v. Devils Laks, 25 N. D. 207, 141 N. W. 756, Ann. Cas. 1915C, 624, at p. 215 of the state report this court says:

"On reasons of public policy, courts have been reluctant to hold elections void except where imperatively necessary from the plain *expressed* legislative purpose." (Italics are ours.)

That seems to be the spirit in which courts approach this subject. Elections are held to give the electorate a fair and full opportunity to make its will effective thru the ballot; the aim of all laws regulating the conduct of elections is to further, not to hamper or frustrate this primary purpose. Strict and technical compliance with the statutes is of less importance than the attaining of the object of all elections—a free and full expression of the will of the voters without fraud, either in recording that will thru the ballot, or in announcing the result thereof by the election officials. The annotator in Ann. Cas. 1915C, 624, says: "Where the statute does not in express terms declare that the election shall be void, the election will be sustained, and the violation of statute will be treated as an irregularity going to the form, instead of to the substance, where, from all the facts, the court does conclude that, in spite of the departure from statutory requirements, a full and fair ballot has been cast and a true and fair return of the entire election has been canvassed and made."

In Kenworthy v. Mast, 141 Cal. 268, 74 Pac. 841, the court say: "The general rule, as stated in McCrary, Elections (§ 165) is that, in the absence of a provision in the statute expressly declaring that a failure in this respect shall render the election void, it will be regarded as so far directory only, and that, unless the deviation from the legal hours has affected the result, it will be disregarded; but that if such deviation is great, or even considerable, the presumption will be that it has affected the result, and the burden will be upon him who seeks to uphold the election to show affirmatively that it has not."

In Riddle v. Cumberland County, 180 N. C. 321, 104 S. E. 662, the court say:

"If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts, whose duty it is to enforce such statutes, must so hold, whether the particular act in question goes to the merits, or affects the results of the election or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, the statute provides that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as

51 N. D.—34.

mandatory if they do, and directory if they do not, affect the actual merits of the same."

In McComb v. Dutton,— Del. Super. Ct. —, 122 Atl. 81, the court say:

"It seems clear to us that the provisions of a statute fixing the time of opening and closing the polls at an election are so far directory that an irregularity in this respect which does not deprive a legal voter of his vote, or admit a disqualified person to vote, will not vitiate the election."

It has been generally held that opening the pools at a later hour than fixed by the statute is an irregularity that does not render the election void, in the absence of a showing of fraud or prejudice to qualified electors, or of a statute expressly declaring that result; Clark v. Leathers, 9 Ky. L. Rep. 558, 5 S. W. 576; Chenoweth v. Earhart, 14 Ariz. 278, 127 Pac. 748; Thornber v. Hart, 29 Cal. App. 284, 155 Pac. 99; Kenworthy v. Mast, 141 Cal. 268, 74 Pac. 841; Packwood v. Brownell, 121 Cal. 478, 53 Pac. 1079; Clark v. Manhattan Beach, 175 Cal. 637, 1 A.L.R. 1532, 166 Pac. 806, or closing them earlier than the law provides; Murphy v. Spokane, 64 Wash. 681, 117 Pac. 476; Links v. Anderson, 86 Or. 508, 168 Pac. 605, 1182 (3 hours).

We do not deem it necessary to review the authorities further. It is no doubt true that all statutes directing how an election shall be conducted are mandatory in the sense that election officials should obey them, but it does not follow that unintentional failure on the part of such officials to comply strictly with the letter of the law imparts a fatal taint to all the proceedings. The duty of obedience is one thing; the consequence of disobedience is another matter. An examination of the authorities upon the subject discloses that, in the absence of a statute expressly invalidating the election in case of deviation from the statutory hour for opening or closing the polls, the primary consideration is whether, as a result of such departure, voters were deprived of the franchise or illegal votes admitted, so as to affect the result. That seems good sense, and, therefore, ought to be good law. There was no prejudice caused any voter and we cannot overthrow an election on purely technical grounds.

It is strenuously urged by appellants that inasmuch as the election notice incorrectly stated the hours for opening and closing the polls,

prejudice must be presumed and the election held void. Neither Section 3903 nor any other statute applicable requires that the notice of election should state the hours for opening and closing the polls. Manifestly, therefore, had the notice contained no statement as to the hours for opening and closing the polls, the election could not be invalidated on that ground alone. It clearly appears that the erroneous statement as to the hours was an innocent inadvertence, and that no voter was in fact prejudiced thereby. The time and place of the election were correctly stated and the voters generally, after an active campaign, participated therein. The will of the majority should not be defeated by an irregularity that does not affect the result.

Appellant relies principally on the case of Elvick v. Groves, 17 N. D. 561, 118 N. W. 228. In that case the polling place in a township in Nelson county, duly designated by the county commissioners, as required by law, was, prior to election day, changed by a vote of the electors in a political meeting to a place several miles distant. This was held to invalidate the election therein. This was more than a mere irregularity. There was no necessity or excuse shown for the change. The power and duty to designate polling places, by statute, lodged in the county commissioners, was usurped by the voters at a political convention or meeting. The facts distinguish it from the one before us. Moreover, the court quotes with approval the following from 10 Am. & Eng. Enc. Law, 684: "There is less latitude allowed in changing the place of holding an election than in varying the time of holding it. . . ."

The trial court entered a judgment adjudging and decreeing that the election held in the village of North Fargo, April 30, 1923, was valid, legal and sufficient, and that at the expiration of six months thereafter such territory became unorganized so as to permit the same to be annexed by the defendant city of Fargo. The court further decreed that the *annexation* proceedings by the city of Fargo, subsequent to such election and subsequent to the 26th day of March, 1924, are in all respects valid and legal and that the city of Fargo has legal possession and jurisdiction of the territory as a part of the city and its officers are entitled to the possession of all the property within the territory of the village "for the taxes of the year 1924, as provided by law in the same manner as other portions of said city." It is then ad-

judged that the individual defendants and the city of Fargo are entitled to recover from the auditor and treasurer of Cass county all the "proceeds of taxes levied and assessed against the property in the territory formerly comprising the Village of North Fargo, for the year 1923, and all previous years, the same to be delivered over to the individual defendants and to be by them used in the payment of the debts and obligations of the said Village of North Fargo and the residue, if any, disposed of as provided by law." The action is then ordered dismissed.

It is objected that the judgment is too broad; that it undertakes to adjudicate upon matters not properly before the court, pertaining to the validity of annexation proceedings which were not completed until after the judgment was entered, and in other ways to settle property rights arising out of the proceedings to annex the territory subsequent to the dissolution election of April 30, 1923.

The issue made by the pleadings and litigated at the trial related solely to the dissolution election of April 30, 1923. If that election is void, necessarily all subsequent proceedings for annexation fall with it. That election, however, may be valid, and yet some part of the subsequent proceedings, involving property, taxation, and the like, may be invalid for failure to comply with the statutes. Upon the latter proposition no issue was properly before the trial court and no binding adjudication could be made thereon. We think that the decree of the trial court must be modified in so far as it adjudges that steps and proceedings subsequent to the dissolution election of April 30, 1923, are legal, correct, and binding; and also insofar as it adjudges rights with respect to the possession of property and of taxation. It is to be presumed that the authorities will in all these matters proceed in conformity with the statutes, but that they have done so cannot be properly decided in this contest, where the main issue is the validity of the dissolution election.

As herein modified, the judgment of the trial court is affirmed.


BIRDZELL, CHRISTIANSON, and NUESSLE, JJ., concur.


BRONSON, Ch. J., dissents.