Argued at Pendleton May 6, reversed with directions June 17, rehearing denied July 15, 1919.

# HANLEY CO. v. HARNEY VALLEY IRR. DIST.

### (180 Pac. 724; 182 Pac. 559.)

**Notice—Irrigation District—Publication of Notice—Sufficiency of Affidavit of Publication.**

1. Affidavit of publication of notice of petition for irrigation district by "foreman of the —— tribune" was not sufficient compliance with Section 833, L. O. L., requiring such affidavit to be made by the printer of the newspaper or his foreman or principal clerk.

**Notice—Organization of Irrigation District—Publication of Notice of Petition—Sufficiency of Affidavit.**

2. Affidavit that notice of petition for organization of irrigation district was published "once a week for a period of four weeks beginning on the eighth day of August, 1917, and ending on the fifth day of September, 1917," was insufficient proof of compliance with Laws of 1917, page 744, Section 1, requiring such notice to be published "once each week for at least four successive weeks," since, under such affidavit, the publication would not necessarily have been made on four successive weeks.

**Waters and Watercourses—Organization of Irrigation District—Publication of Petition—Jurisdictional Requirement.**

3. Laws of 1917, page 744, Section 1, requiring publication of petition for organization of irrigation district once each week for at least four successive weeks before the time at which it is to be presented, is a jurisdictional requirement.

**Waters and Watercourses—Organization of Irrigation District—Sufficiency of Petition.**

4. Petition for organization of irrigation district under Laws of 1917, page 744, Section 1, *held* sufficient compliance with requirements of such statute.

**Waters and Watercourses—Irrigation District—Petition—Qualification of Subscribers.**

5. Petition for irrigation district is not required in view of Laws of 1917, page 744, Section 2, to enumerate the qualifications of subscribers under Section 29.

**Waters and Watercourses—Irrigation District—Proceedings for Organization.**

6. The same technical precision that is observed in a regular law action is not required in a proceeding for the organization of an irrigation district before the County Court.

Waters and Watercourses—Irrigation District—Proceedings for Organization—Order of Court on Final Hearing.

7. Under Laws of 1917, page 744, Section 2, as amended by Laws of 1919, page 442, providing that upon final hearing of petition for organization of irrigation district court shall make an order determining *inter alia* whether the requisite number of owners of the land within proposed district shall have petitioned for the formation thereof, such order should state all the facts found or determined by the court upon such hearing.

Appeal and Error—Review—Evidence—Exclusion of Land from Irrigation District.

8. Court's refusal to exclude land within proposed irrigation district from proposed district cannot be reviewed on appeal, in absence of the evidence upon such question.

Waters and Watercourses—Irrigation District—Exclusion of Land from District.

9. Upon petition for irrigation district and objection thereto by owner and requests to exclude land from proposed district, an issue is raised requiring proof of actual conditions existing before court can determine whether land should be excluded, in view of Laws of 1917, page 769, Section 37, subdivision (d).

[As to inclusion of land in irrigation district, see note in Ann. Cas. 1916A, 1222.]

### PETITION FOR REHEARING.

Waters and Watercourses—Irrigation Districts—Proceedings for Organization—Order of County Court—Jurisdiction to Issue.

10. Where the proof of publication of notice of petition for irrigation district was defective in failing to show compliance with Laws of 1917, page 744, Section 1, requiring publication once each week for at least four successive weeks, and the County Court nevertheless proceeded with final hearing under Section 2, it would be the duty of the Circuit Court as upon a judicial examination of the proceedings as provided for in Section 41 to set aside the order of the County Court for want of jurisdiction.

From Harney: DALTON BIGGS, Judge.

In Banc.

This is an appeal by William Hanley Company from a decree of the Circuit Court, affirming an order of the County Court, organizing the Harney Valley Irrigation District Number 1, under the provision of Chapter 357 of the Gen. Laws of Oregon, 1917.

It is stated in substance in the briefs that Silvies River rises in the Blue Mountains on the south side of

Strawberry Mountain and flows in a southeasterly direction about 50 miles, where it enters Harney Valley proper and then continues for about 25 miles in a southeasterly direction across the valley, emptying into the north side of Malheur Lake in township 25 south, range 32½ E., W. M. About three miles below the point where it enters the valley the river divides into two forks known as the East Fork and the West Fork of Silvies River. The territory lying between these two forks of the river being commonly and locally designated as "The Island." Harney Valley is practically level, sloping gently to the south and east from Burns to Malheur Lake. Thousands of acres of the valley situated on "The Island" and along both forks of the river were naturally overflowed from the river in the spring and early summer months forming natural wild meadow lands and in places where the water is the deepest swamp grasses and tules grow in abundance. By individual systems of irrigation as well as by combined systems of irrigation, the owners of these lands from time to time during the last thirty years have controlled the natural flow of the waters of the river by means of dams erected in the river at various points, and canals and ditches leading therefrom, and have taken the waters out onto the higher ground, thereby making both classes of land produce abundant crops of wild hay. The appellant, William Hanley Company, for a great many years has been the owner of what is commonly called "Bell A" Ranch located about two and one half miles southeast of Burns, Oregon, and consisting of between 7,000 and 8,000 acres of land. These are practically wild meadow lands and grain lands, and lie on either side of the East Fork of Silvies River. Appellant asserts that:

"These lands have permanent, established and decreed water rights and have been for many years last past, and are now, thoroughly irrigated and reclaimed from the waters of Silvies River and each year grow abundant crops of natural wild meadow grass and grain, besides providing abundant pasture for stock after the crops are harvested. The system of irrigation has been built up from year to year by the construction of canals, ditches, dams and levees' which completely distribute the water over the entire surface of the ground during the irrigating seasons."

The construction of this system cost not less than $40,000.

In ordinary years there are grown on these lands from 6,000 to 8,000 tons of natural wild meadow hay. Approximately 3,600 acres of this irrigated land of appellant are included within the proposed land of the irrigation district. The record shows as follows: In August, 1917, 69 land owners signed and presented a petition to the County Court of Harney County, Oregon, proposing and asking for the formation of an irrigation district under the provisions of Chapter 357, Gen. Laws of Oregon, 1917. The petition is in substance as follows:

"We, the undersigned citizens of the United States, constituting a majority of the owners of land within the boundaries as hereinafter described, or who are *bona fide* claimants to unoccupied land under the laws of the United States, or of the State of Oregon, all being duly qualified electors under the law of the State of Oregon for organizing irrigation districts, being desirous of forming an irrigation district embracing the land hereinafter designated within the boundaries hereinafter described and set forth, and utilizing the waters of the Silvies River, Foley Slough and Poison Creek for the purpose of irrigation and the reclama-

tion of said lands, do hereby petition your Honorable Court as follows:

"That it is the purpose of the undersigned petitioners to organize an irrigation district under and by virtue of the irrigation district laws of the State of Oregon as recited in Chapter 357, General Laws of Oregon, 1917, providing for the organization and management of irrigation districts, and that your Honororable Court do proclaim a district as set forth herein; designating the name of said district; dividing said district into three subdivisions and defining the boundaries thereof, and that your Honorable Court proceed with such dispatch as may be under said law to call an election for the purposes above set forth and to do all things necessary under said law for the formation of said district, designating the time and places for voting at said election, and that the boundaries and description of land under said district shall be as follows, to-wit":

Here follows a complete description of the boundaries of the land proposed to be embraced within the irrigation district containing in all 43,638.02 acres more or less according to the government surveys.

On the sixth day of September, 1917, the date mentioned in the petition on which the same would be presented to the County Court, the petitioners filed proof of publication of notice of petition, the substance of which is as follows:

"I, Bert Wheeldon, being first duly sworn, say I am foreman of the HARNEY COUNTY TRIBUNE, a weekly newspaper published at Burns, Harney County, State of Oregon, and of general circulation; and that the Notice of Petition for Irrigation District of which the annexed is a true and correct copy, was published in the HARNEY COUNTY TRIBUNE proper, and in the regular and entire issue thereof once a week for a period of four weeks, beginning on the 8th day of August, 1917, and ending on the 5th day of September, 1917,

and that the HARNEY COUNTY TRIBUNE was regularly issued and published during said period.''

. This was attached to the petition and notice as published. On October 4, 1917, appellant filed objections to the petition, describing its land which was included within the proposed boundaries of the irrigation district, and protesting against the organization of the district upon the following grounds:

''First, That none of the petitioners whose names appear on said petition is shown by said petition to possess the qualifications required of such petitioners;

''Second, That the petition is insufficient to give the Court jurisdiction to act in this proceeding;

''Third, That the publication of said petition and the notice of the hearing thereof were insufficient to give the Court jurisdiction herein.''

And on the same date the William Hanley Company, by its attorneys, petitioned the County Court for the exclusion of its lands from the boundaries of the irrigation district for the following alleged reasons:

''That all of said lands have been for many years last past and now are fully and completely irrigated and reclaimed, and come under the classification of irrigated lands designated in the Act of 1917, Chapter 357 of the Laws of Oregon, providing for the organization of irrigation districts.

''That these lands hereinabove mentioned and described, now being fully irrigated and reclaimed, and having ancient and established and decreed water rights attached thereto, should not by right be included within the boundaries of said proposed irrigation district, and would be entitled to be excluded from the boundaries of said proposed irrigation district should the same be formed as petitioned for, in accordance with the provisions contained in Section 37 of said Act of 1917, Laws of Oregon.

"That the said lands hereinabove described have at the present time, and for many years last past have had, a complete system of irrigation and drainage, which system is applicable to the above described lands only, and that the said lands are not in any way whatever necessary to the formation or construction of said proposed irrigation district, or to any part thereof, and can be excluded therefrom without injury to the same."

And also averring that on September 22, 1917, at a meeting of the petitioners for the proposed irrigation district after a general discussion of the matter they voted unanimously to exclude appellant's lands from the district; and that the lands were included within the boundaries of the proposed district without the knowledge or consent of the Hanley Company; and praying that such lands be excluded from the boundaries of the proposed district. Objections to the organization of the district were filed which are not material upon this appeal. On the same date the County Court overruled the objections and made findings in the matter of the organization of the irrigation district in substance as follows:

"The court finds that the requisite number of owners of land within the proposed district have petitioned for the formation thereof, and it is hereby ordered that said petition herein presented contains the signatures of 50 and a majority of the *bona fide* land owners within the boundaries of the proposed district having the qualifications as defined in Section 29 of Chapter 357 of the General Laws of Oregon, 1917."

Whereupon the William Hanley Company appealed to the Circuit Court. At the time of the hearing in the Circuit Court on August 3, 1918, counsel for William Hanley Company and petitioners filed a stipulation of the following purport:

"It is hereby stipulated and agreed by and between counsel for the William Hanley Company and for the petitioners for the organization of the Harney Valley Irrigation District No. 1, as described in said petition, that more than 50 of the signers whose names appear on the petition filed in the County Court of Harney County, were at the time of signing said petition *bona fide* owners of one or more acres, of land within the proposed boundaries of said district, whose names appeared on the assessment roll of said county for the preceding year, and were duly qualified petitioners under the statutes of Oregon providing for the organization of irrigation districts.

"Dated, Burns, Oregon, August 1st, 1918.

"LIONEL R. WEBSTER,
"C. H. LEONARD,
"Attorneys for William Hanley Company.
"C. A. SWEEK,
"Attorney for Petitioners."

Whereupon the trial court affirmed the order of the County Court.

Appellant herein assigns the following errors:

"(1) The Court erred in holding that the petition was sufficient to give the County Court jurisdiction. (2) The court erred in holding that the proof of publication of notice was sufficient. (3) The court erred in not ordering the lands of appellant to be excluded from the boundary of the proposed irrigation district."

REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. C. H. Leonard* and *Messrs. Wood, Montague & Matthiessen,* with an oral argument by *Mr. Leonard.*

For respondents there was a brief over the names of *Mr. C. A. Sweek, Messrs. Hawley & Hawley* and *Mr. C. B. McConnell,* with an oral argument by *Mr. Sweek.*

BEAN, J.—First considering the question of publication of the notice of the presentation of the petition we note that Section 1 of Chapter 357, Laws of Oregon, 1917, page 744, requires that in making application for the organization of an irrigation district pursuant to the provisions of this chapter,—
"such petition * * shall be published once each week for at least four successive weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where said petition is presented, together with a notice stating the time of the meeting at which the petition will be presented. * * "

1. Section 833, L. O. L., provides that proof of the publication of a notice required by law, or by an order of court or a judge, to be published in a newspaper, may be made by the affidavit of the printer of the newspaper, or his foreman or principal clerk, annexed to a copy of the notice, specifying the times when and the paper in which the publication was made. A reference to the affidavit of publication discloses that the same was made by the foreman of the "Harney County Tribune," the weekly newspaper in which the notice was published. This is not a compliance with the section of the statute referred to. The identical question here presented was involved in the case of *Jeffery* v. *Smith,* 63 Or. 514 (128 Pac. 822), in which this court, Mr. Justice MOORE writing the opinion, held that under Section 833, L. O. L., an affidavit of publication of notice made by the foreman of the "Evening Telegram," a daily newspaper published in the City of Portland, is insufficient as against proper objection.

2, 3. The further objection to the proof of publication is that the affidavit shows that the notice of petition was published "once a week for a period of four weeks beginning on the eighth day of August, 1917, and ending on the fifth day of September, 1917," and that with four publications, one made on August 8th and one on September 5th, the publications would not necessarily be made on four successive weeks and that either three of the publications of the paper on the dates between August 8th and September 5th might not have contained the publication of the notice. The affidavit does not show that the publication was made "once each week," neither does it show that the publications were made for "four successive weeks." This is a jurisdictional requirement, and in order for the County Court to exercise authority in the matter of the organization of the irrigation district, it is necessary that Section 1, of Chapter 357, Gen. Laws of Oregon, 1917, be complied with in this respect and that proof thereof be made in conformity with the statute and incorporated in the record. The organization of such a district is of vast importance to the people directly interested, as well as to the public, in the promotion of irrigation, and it is essential that in order that the usual transactions of such an irrigation district such as the provisions for paying for a system of irrigation works, as issuing bonds and the like, should be in conformity with the mandate of the statute and not invalid. It is better that there shall be no grave question in regard to the formation of such a district which would tend to lessen the credit of the district.

The holding that the petition was sufficient·is assigned as error. Section 1 of Chapter 357, Laws of 1917, enacts that:

"Whenever fifty or a majority of the owners of land irrigated or susceptible of irrigation desire to provide for the construction of works for the irrigation of the same, or desire to provide for the reconstruction, betterment, extension, purchase, operation or maintenance of works already constructed, or for the assumption as principal or guarantor of indebtedness on account of district lands to the United States under the Federal reclamation laws, they may propose the organization of an irrigation district under the provisions of this chapter by signing a petition therefor and presenting the same to the County Court of the county in which the land, or the greater portion thereof, is situated; said petition shall set forth and particularly describe the boundaries of the proposed irrigation district and shall state that it is the purpose of the petitioners to organize an irrigation district under the provisions of this Act, and shall pray that the same be organized hereunder. * * "

4. By reading that portion of the petition set out above it will be seen that it conforms to this requirement of the statute. The petition is sufficient to confer jurisdiction upon the County Court if the same and the notice of the presentation thereof had been shown to have been published as required by law: *Herrett* v. *Warmsprings Irr. Dist.,* 86 Or. 343 (16 Pac. 609); *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182).

5, 6. It is the contention of the appellant that the petition should enumerate the qualification of the subscribers. The statute directs that such initiatory petition shall set forth and particularly describe the boundaries of the proposed irrigation district, and shall state that it is the purpose of the petitioners to organize an irrigation district under the provisions of this act, and shall pray that the same be organized hereunder. The statute does not require that all of

the qualifications of the subscribers should be declared therein.   Section 2 of the Act directs that: On the final hearing the court shall make and enter an order determining, *inter alia* whether the requisite number of owners of the land within such proposed district shall have petitioned for the formation thereof, but all of such facts are not commanded by the law to be contained in the petition.   The same technical precision that should be observed in a regular law action is not required in a proceeding for the organization of an irrigation district before the County Court.   Section 29 of the Act of 1917 declares the qualification of voters.   It directs that:

"The term 'owner of land,' or 'elector,' as used in this Act, shall include every person, male or female, over the age of twenty-one years, whether a resident of the district or State or not, who is a *bona fide* owner of one acre or more of land situated within the district and whose name appears on the last assessment roll, or who is the holder of an uncompleted title or contract to purchase State or Carey Act lands.   Entrymen upon public lands of the United States shall be considered as landowners for the purpose of this Act, and shall be qualified petitioners for the organization of an irrigation district, and shall share all the privileges and obligations of landowners within the district, including the right to vote or hold office, subject to the terms of the Act of Congress entitled 'An Act to promote reclamation of arid lands,' approved August 11, 1916.

"Any corporation shall be entitled to vote as a single landowner through any officer or agent duly authorized in writing under the seal of the corporation.   Any guardian, administrator or executor authorized to act as such of a person or estate owning land within the district shall be considered a landowner for the purposes of this Act, where the owner in fee is not otherwise entitled to vote."

This section points the way, in part at least, for the determination by the County Court of the qualifications of the petitioners, but the mandate of the legislature does not direct that all of these particulars should be contained in the petition. It might have been convenient for the County Court, if the petition had shown that the subscribers thereto each owned one acre of land within the district, as well as other particulars. We think that the question of the qualifications of the subscribers to the petition in this proceeding, as to the ownership of land, is set at rest by the stipulation of counsel for the interested parties quoted above.

7. However, in view of the future steps which may be taken in this matter, it may be proper to say that it would seem that all the facts found or determined by the County Court should be stated in the order made pursuant to Section 2 of this Chapter, which was amended by Laws of 1919, page 442, so that upon an examination of such proceedings an appellate court may see whether such facts are sufficient, and also so that the order of the County Court may plainly set forth the matter of which it is made evidence by virtue of the statute. For the County Court to order that a petition in such a matter contain the signatures of fifty and a majority of *bona fide* land owners within the boundaries of the proposed district ''having the qualifications as defined in Section 29 of Chapter 357 of the Gen. Laws of Oregon, 1917,'' is to say the least a scant compliance with the statute. The record of the County Court should show the time and manner of the publication of the petition and notice.

It is urged by appellant that the court erred in not excluding its lands from the proposed irrigation dis-

trict; that the law contemplated the inclusion of arid lands only in such districts. Section 2 of the act provides that:

"When such petition is presented the county court shall hear the same and may adjourn such hearing from time to time, not exceeding four weeks in all, and on the final hearing may make such changes in the proposed boundaries as the court may find proper, and shall establish and define such boundaries," with certain provisions.

Under this section taken together with Section 37, appellant submits that it was the duty of the County Court upon petition therefor by the Hanley Company to exclude its lands from the irrigation district.

8. Whatever may be the law upon this point, the question of the exclusion of appellant's lands is not before us in this proceeding in a manner so that the same can be satisfactorily determined. It is true that a detailed and quite comprehensive statement in regard to appellant's lands and the manner in which they have heretofore been irrigated is contained in the briefs, but we search the record in vain to find any proof in regard to this important question. Before an appellate court can pass upon such a weighty matter, proof of the existing conditions should be made.

9. In proceedings of this kind the issues, if any, are raised in a general way. The petition is somewhat analogous to a complaint in a suit. The objections of the William Hanley Company and the request to exclude its lands from the district are in the nature of an answer to the petition and practically raise an issue. They are in effect in direct conflict with the petition, and in our view should be supported by proof of the actual conditions existing before the court can determine whether or not the lands should be excluded

from the district. This is in harmony with Section 37, subdivision d, of the act. The same principle applies to watering dry land as applies to the reclamation of swamp-lands. Some of the lands which might be beneficially included in an irrigation district might produce a light crop without irrigation, and also such lands might already be provided with facilities for a partial irrigation thereof by means of which they would produce one third or one half as much vegetation as when irrigated from the proposed system. As often stated, the proposed irrigation system might cause several blades of grass to grow where none grew before, or the proposed irrigation district might furnish means for irrigation in addition to the natural irrigation of such lands so that "two blades of grass" would grow "where only one grew before." Whether the lands of appellant are so conditioned is a question of fact which should appear in the record: *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 390, 17 Sup. Ct. Rep. 56). For the reason first indicated herein, the decree of the lower court is reversed, and the order of the County Court organizing and establishing the Harney Valley Irrigation District Number 1 as described in the petition is set aside and reversed, and this proceeding remanded to the Circuit Court with directions to remand the same to the County Court for such further proceedings as may be deemed proper not inconsistent with this opinion.

REVERSED WITH DIRECTIONS.    REHEARING DENIED.

BURNETT, J., concurs in the result.

Denied July 15, 1919.

PETITION FOR REHEARING.

(182 Pac. 559.)

On petition for rehearing.    DENIED.

*Messrs. Hawley & Hawley* and *Mr. C. B. McConnell*, for the petition.

*Mr. C. B. Leonard, contra.*

In Banc.

BEAN, J.—10. The petition for rehearing suggests, that when this matter was before the County Court the objection was to the publication, and not to the proof of the publication; and that the same question was passed upon by the Circuit Court. Counsel for the irrigation district urge that due notice of the proceedings in this matter was given. It is asserted that the delay caused by setting aside the order of the County Court will work an injustice. We regret that there should be any loss of time in regard to a matter of so much importance. It was with this view that the matter was reversed in order that proper proceedings in the matter could be taken to correct the same, as shown in our former opinion.

The County Court is authorized to grant the petition of an irrigation district upon compliance with Section 1 of Chapter 357, Gen. Laws of Oregon, 1917. The above section requires, among other things, that such petition shall be published once each week for at least four successive weeks before the time at which the same is to be presented, in some newspaper printed

and published in the county where said petition is presented, together with a notice stating the time of the meeting at which the petition will be presented.

The only way in which the court can determine whether or not that part of the section has been complied with, and the required notice has been given is by the proof of the publication of such notice. The proof of the publication of the notice of the presentation of the petition in the matter of the organization of this irrigation district is admittedly defective and must be so considered. As the matter seemed to us upon the former consideration, and as we still look upon the same, when it is ascertained that the jurisdictional requirement of the statute has not been complied with, and the County Court was without authority to proceed with the final hearing mentioned in Section 2 of the act, there is no alternative for the court, except to set the order of the County Court aside. We fail to see the availability of the distinction attempted to be made between the "publication of the petition and the notice of hearing thereof," and the proof of such publication as the court can only determine what the publication was by the proof thereof. It was held by this court in *Rynearson* v. *Union County,* 54 Or. 181 (102 Pac. 785), that when it appears at any stage of the proceedings, upon the trial of a cause, that an inferior court has acted without jurisdiction, and the proceedings are subject to review, the duty devolves upon the court to set aside the proceedings, upon its own motion, and purge the record of informalities, and refuse to proceed further, though the defect has not been challenged in a formal way.

When we notice the provision in Section 41 of this Chapter for the institution of proceedings in the Cir-

cuit Court for the purpose of having a judicial examination and judgment as to the regularity and legality of the proceedings in connection with the organization of a district, and the proceedings of the board and of the district providing for, and authorizing the issue and sale of bonds of the district, it is at once apparent that where there has been a want of legal proof of the notice required by the statute in order to initiate the proceedings for the organization of such a district, that it is the duty of the court to set aside the attempted proceedings in order that steps be regularly taken for the presentation of such petition. This is for the best interest of all concerned.

Subdivision (b) of Section 41 of the act requires the court upon the hearing of such special proceedings to find and determine whether the notice of the filing of the petition has been duly given and published. It is stated in the brief that the proof of publication in this case was made on the regular printed form in general use by the newspapers in that county. It seems strange that at this late date a form of affidavit of publication should be in use in the office of a newspaper. Twenty-five years ago there might have been some reason for it. It is hoped the form will be changed.

Believing that if the irrigation district should continue its ordinary business, and the proceedings should come up for judicial examination hereafter, that the court would be compelled to hold that they were illegal as heretofore indicated, the petition for rehearing is denied. Under the circumstances of this case as disclosed by our former opinion, after further consideration, each party will be required to pay its own costs.

REVERSED WITH DIRECTIONS.   REHEARING DENIED.