Argued June 11, affirmed as modified July 6, 1920.

## MEDFORD IRR. DIST. *v.* HILL.

(190 Pac. 957.)

**Waters—Irrigation District—Organization—Proceedings for Confirmation.**

1. In proceedings for the confirmation of the organization of an irrigation district and the issuance of its bonds, which are in the nature of proceedings *in rem*, the Supreme Court on appeal from a decree of confirmation must examine every question presented by the record, whether discussed in the briefs or not.

Waters—Irrigation District—Confirm Organization—Nonappearing Parties—Notice.

2. ' In proceedings to confirm the organization of an irrigation district and the issuance of its bonds, neither the Circuit Court nor the Supreme Court have jurisdiction to enter a decree binding on land owners who did not appear, where the hearing was held before the expiration of ten days after the last publication of the notice, contrary to Laws of 1917, page 773, Section 41, subdivisions "a," "d."

Waters—Irrigation District—Confirmation—Appearance—Jurisdiction of Court.

3. Though the statutory notice for proceedings for the confirmation of an irrigation district and the issuance of its bonds was not given, the court can determine the legality of the district and the bonds as against the objections of a land owner who appeared and answered.

Waters—Irrigation District . Bond Election—Duty of Board of Directors.

4. Under Acts of 1917, page 754, Section 19, authorizing election for the issuance of irrigation district bonds for any purpose, the board of directors, in calling the election for a bond issue, must specify in a general way the purpose for which the bonds are to be sold, and cannot, after the election, abandon the purpose stated entirely and sell the bonds to finance a totally different plan.

Statutes—Irrigation Act of Another State—Notice for Election—Preclude Adoption of Construction.

5. Where the irrigation district act of another state authorized an election for the issuance of district bonds in the amount determined, while the Oregon statute requires an election for the issuance of bonds for any purpose, the legislature cannot be held to have adopted a construction previously placed on the act of the other state as not requiring the purpose of the bonds to be stated in the call for election.

Waters—Irrigation District Bond Election—Notice—Necessity for Stating Purpose.

6. The change from the Irrigation District Act of 1911 requiring submission at election of the question whether the bonds required for the project previously determined shall be issued to that of Acts of 1917, page 754, Section 19, requiring an election for issuance of bonds for any purpose, does not indicate an intention to abolish the necessity of stating the purpose of the bonds in the call for the election.

Waters—Irrigation District Bonds—For What Purpose to be Used —Notice to State General Plan.

7. In stating the purpose for which irrigation district bonds are to be issued, it is not necessary to state more than a general plan, and such plan may be modified or changed in particulars after the bonds are authorized, but cannot be completely abandoned and another plan adopted.

Waters—Irrigation District—Insufficient Resolution—Bonds—Invalid Election.

8.   Where the resolution of the board of directors of an irrigation district adopted a particular project in one paragraph, and in the next paragraph called an election to authorize a bond issue, the sale of bonds authorized at that election to construct a totally different project from that adopted is invalid, whether the resolution be construed as calling the election to issue bonds for that project or as not stating the purpose of the bond as required by statute.

Waters—Irrigation Districts—Lands may be Eliminated—Statutory Procedure.

9.   Lands can be eliminated from an irrigation district after its organization over the objection of other land owners in the district only by strictly following the statutory procedure therefor, including the publication of notice; a stipulation between the district and the owners of the land to be eliminated cannot authorize the elimination of the land as against those not parties thereto.

     [As to lands which may be included in irrigation district, see note in Ann. Cas. 1916A, 1222.]

From Jackson: FRANK M. CALKINS, Judge.

In Banc.

This is a proceeding brought in the Circuit Court of the state of Oregon for Jackson County, to confirm the creation and organization of an irrigation district, and the election and proceedings authorizing the issue and sale of the bonds of said district in the sum of one million five hundred thousand ($1,500,000) dollars, for irrigation purposes.

According to the petition for the original organization of the district, and the order of the County Court creating the same, the district was to comprise 18,500 acres of land.

An election was called and the district was organized and officers elected. After the organization the board of directors met and adopted a project, designated as the ''Big Butte Project,'' for the obtaining of water to irrigate the district, and directed that bonds should be issued in the sum of fifteen hundred thousand ($1,500,000) dollars, for the construction and installation of a system for irrigating the dis-

trict, and to provide for the payment of the first year's interest on the bonds, and calling an election to determine whether or not the bonds should be issued. At the election the result was favorable to the issuance of the bonds by a small majority.

There is some indefiniteness and uncertainty as to whether the order for a bond election made by the board of directors of the district was tied up indefinitely by such order to the Big Butte Project. The resolution adopting that particular project, and the resolution calling for the bond election, were separately stated, but they seem to have been offered as one resolution and acted upon together by the same vote and proceeding.

Thereafter this proceeding was brought in the Circuit Court to confirm the proceedings before the County Court, the action of the board of directors, and the proposed sale of bonds.

Certain of the land owners in the district, and among others the defendant Hill, appeared and contested the proceedings for confirmation, and some of them asked that their land be eliminated from the district, alleging divers grounds therefor.

Pending the final decision upon this confirmation proceeding, the directors concluded that the original project, designated as the "Big Butte Project," was not feasible, and rescinded the order adopting that project, and adopted an entirely different one, which is known as the "Little Butte Project."

It seems to be conceded that the "Little Butte Project" would not furnish water sufficient to irrigate the whole eighteen thousand five hundred (18,500) acres included in the original boundaries, and the directors concluded to permit all of those who were contesting the proceeding in the Circuit Court to

have their lands eliminated from the district, and proceedings were had to that effect.

Just how this result was brought about does not seem to fully appear from the record, but it seems that some of the land owners, holding land to the amount of something over eight thousand (8,000) acres, had appealed to the Supreme Court from a decision of the Circuit Court, refusing to eliminate their lands from the district, and upon that appeal to the Supreme Court there was a stipulation between such parties and the board of directors that their property should be eliminated, and upon such stipulation a decree of this court was so ordered.

The facts as to the change of the project and the elimination, and consequent reduction of the irrigation district to about ten thousand (10,000) acres, does not appear from the petition of the board of directors to have such proceedings confirmed; but the defendant, Hill, who is now the contesting party, appeared in the Circuit Court and filed an answer setting up such proceedings, and making the same the basis of an objection to any order confirming the sale of the bonds of the district.

There was a decree of the Circuit Court sustaining the proceedings and validating the issuance of the bonds, and from this decree the defendant appeals to this court.          AFFIRMED AS MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Rawles Moore.*

For respondents there was a brief and an oral argument by *Mr. Lincoln McCormack.*

BENNETT, J.—This proceeding is in the nature of a friendly suit to test the legality of the organiza-

tion of the district in question, and the regularity of the proceedings by which the bonds were authorized. Nevertheless, the matter has been presented upon both sides with the utmost good faith and with great earnestness and ability.

1. The case is a very important one, not only on account of the very large amount of bonds which are involved in this particular proceeding, and the importance of this particular irrigation project to the development of the country in which it is situated; but because it will also establish a rule in relation to the proceedings to authorize the creation of other irrigation districts, and the issuance of bonds for such irrigation projects.

The proceeding is in the nature of a proceeding *in rem,* and in view of its character and importance we think, before decreeing the validity of these bonds, that it would be and is our duty to examine every question presented by the record, whether discussed in the briefs or not.

2. At the outset of the case we are met with the contention on behalf of the defendants, that the court has no jurisdiction to establish the validity of these proceedings, or declare the validity of the bonds, because, as contended, the notice for the hearing in the Circuit Court was not published in accordance with the provisions of the act authorizing the proceedings.

Subdivision "a" of Section 41, Chapter 357, Laws of 1917, authorizing proceedings of this kind, provides that after the petition for the confirmation shall have been filed by the board of directors—

"The court shall fix the time for the hearing of said petition and shall order the clerk of the court to give and publish a notice of the filing of said petition. The notice shall be given and published for

three successive weeks in a newspaper published in
the county where the office of the district is situated.
The notice shall state the time and place fixed for
the hearing of the petition and the prayer of the
petitioners, and that any person interested in the
organization of said district, or in the proceedings
for the issue or sale of said bonds, may on or before
the day fixed for the hearing of said petition, demur
to or answer said petition.''

Subdivision "d" further provides:

"The board of directors may, within the time here-
inafter limited, after the order of the county court
declaring the organization of any irrigation district
hereunder, or declaring the result of any election
hereunder, or after the order of the board of directors
of such irrigation district including or excluding any
lands in or from said district or declaring the result
of any election, general or special, herein provided
for, or after any order of such board of directors
levying any assessment, general or special, or order-
ing the issue of any bonds for any purpose here-
under, or after the order determining any bond issue
or providing for the same, or after such bond issue,
bring a proceeding in the Circuit Court of the county
in which the district, or the larger portion thereof, is
situated for the purpose of determining the validity
of any of the acts or things in this section above
enumerated.   Said proceeding shall be a proceeding
in the nature of a proceeding *in rem,* and the prac-
tice and procedure therein shall follow the practice
and procedure of suits in equity so far as the same
shall be consistent with the determination sought to
be obtained except as herein provided.

"Jurisdiction of the said irrigation district, of each
and all of the freeholders, assessment payers and
legal voters therein shall be obtained by the publica-
tion of notice directed to said district and to 'all free-
holders, legal voters, and assessment payers within
said district' without naming such freeholders, legal
voters, and assessment payers individually.   Such
notice shall be served on all parties in interest by

publication thereof for at least once a week for three successive weeks in some newspaper of general circulation published in the county where said proceeding is pending, and jurisdiction shall be complete *within ten days after the full publication of said notice as herein provided."*

The notice in this case was dated the sixteenth day of January, 1919, and the time of the hearing, as set therein, was the eighth day of February, 1919. It was published in the ''Medford Mail Tribune," and the affidavit of publication states that—

"It was published in the regular and entire issue of said newspaper, once each day for three successive weeks; the first publication thereof having been made on the 17th day of January, 1919, and the last publication thereof having been made on the 7th day of February, 1919.''

So it will be seen that there was no ten days after the last publication of the three weeks of notice, as required by subdivision "d," section 41, Chapter 357, Laws of 1917, and if that subdivision applies the publication was not sufficient.

The provisions of Section 41, which we have already quoted, are not very definite and certain. There seems to be a duplication between the general provisions and subdivision "a," on the one hand, and subdivision "d," on the other. We think, however, that taking the legislative act as a whole and construing it by its four corners, as we must do, the notice should be published three weeks, and the last publication should be at least ten days before the date of the hearing, in order to give the court jurisdiction over nonappearing land owners within the boundaries of the district, in a confirmation proceeding of this kind. It follows that neither the Circuit Court nor this court would have jurisdiction to enter

a decree binding upon the land owners who are not appearing.

3. However, the defendant Hill has appeared and answered in the cause, which is sufficient to give jurisdiction as between him and the board of directors, who are petitioners for the confirmation.

In order, therefore, that there may be no unnecessary delay, we will proceed to decide the question in issue, as between the petitioners and the defendant Hill.

There is no defect in the original proceeding for the organization of the district, which has been pointed out, or which we have been able to discover, which would be fatal thereto, under the previous decisions of this court.

The constitutionality of this act has been frequently upheld in this state: *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182); *Gard* v. *Peck,* 91 Or. 33 (178 Pac. 186); *Hanley Co.* v. *Harney Valley Irr. Dist.,* 93 Or. 78 (180 Pac. 724, 182 Pac. 559).

The constitutionality of a similar act in California has been many times upheld by the Supreme Court of that state, and finally by the Supreme Court of the United States in *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes).

We think, therefore, there was no error in the decree of the Circuit Court, in so far as it confirmed the organization of the district, and the proceedings in relation thereto.

As to that portion of the decree of the Circuit Court confirming the validity of the bonds to be issued, it appears that the original proposition, at the time the bonds were voted, was to bring in the water of a certain stream, known as Big Butte Creek,

at an estimated cost of fifteen hundred thousand ($1,500,000) dollars, and the projected district at that time included about 18,500 acres, so that the estimated cost was $75 per acre.

It is alleged in the answer of defendant Hill, and expressly admitted in the petitioner's reply, that this project has been entirely abandoned, and that since the election upon the bonds the board of directors has rescinded the action adopting the same and substituted another project to bring in the waters of Little Butte Creek, at a cost of twelve hundred fifty thousand ($1,250,000) dollars, and has eliminated about eight thousand (8,000) acres of land, so the cost would be about $125 per acre, instead of $75, and it is admitted and conceded in the pleadings that the board of directors are now attempting to sell the bonds for the purpose of the new project, which was not considered at all at the time the bonds were voted, and which is an entirely different proposition from the one the people had in view at the time the bonds were so authorized.

We think we would not be justified in confirming the sale of the bonds for this new and entirely different purpose, without a new election, giving the land owners who are now to be included in the district an opportunity to vote thereon.

4. Section 19 of the Act of 1917 (Chap. 357, p. 754), provides:

"Upon order of the directors duly entered, an election shall be held to determine whether bonds in any amount the board may deem necessary shall be issued *for any purpose* necessary or convenient in carrying out the provisions of this Act, including the refunding of outstanding bonds, or whether the right to enter into an obligation or contract with the United States shall be authorized. * * "

We think the words "for any purpose," italicized above, together with the clauses following, indicate an intention upon the part of the legislature, that there should be some general plan or purpose adopted for the bringing in of water before a bond election, which purpose should be expressed in the order of the directors authorizing the election, and upon which the land owners can vote intelligently as to whether or not the bonds for that purpose shall be issued.

If this were not true, bonds could be issued and sold without any project whatever having been selected or being in view, and upon the mere chance that some feasible proposition for obtaining water could be discovered and decided upon at some time in the future.

We do not think an act of this kind, authorizing the burdening of large agricultural districts with great sums of indebtedness, approximating the entire value of the lands in the district, and to be enforced oftentimes against the will of a portion of the land owners, should be so loosely construed. Such enterprises are full of risk and danger at the best, and must necessarily be disastrous to the entire district if they fail.

The California act, generally known as the "Wright Act," passed in 1887 (Stats. 1887, p. 290), and upon which other Irrigation District Acts have been more or less modeled, was loosely drawn and was, at first, still more loosely construed by the courts.

Mr. Chandler, in his work on Western Water Law, page 143, sums up the final outcome of the 25 companies that issued bonds under this early law, and the decisions so loosely construing the same, as follows:

"Of the 25 that issued bonds, 7 have made some kind of a settlement and have no outstanding obligations as districts at this time. Two have made settlement, but still have small outstanding indebtedness that either has been declared illegal or cannot be found. Four have made settlement by exchanging new for old bonds and are now active, and with the exception of one, whose reorganization is not yet complete and which therefore cannot be judged, are active and successful and can undoubtedly be counted on to pay both bonds and interest as due. Five have compromise settlements pending. Seven have apparently been totally abandoned, with no plan of settlement as yet seriously taken up.

"Where settlements have been made, they have been so different that it is hard to explain them with sufficient brevity for the purpose of this paper, and reference is therefore made to the table that will be submitted. The lowest basis of settlement has been 30 cents on the dollar, and the highest between 80 cents and 90 cents. Several compromised at 50 cents."

Such results not only bring catastrophe and financial ruin to the land owners within the irrigation districts, and to the bond buyers who are compelled to take a heavy loss on each dollar invested in the bonds but they discredit irrigation bonds generally and make it difficult, and sometimes impossible, to market the same to finance really meritorious undertakings.

In construing our own law we cannot suppose that the legislature intended to authorize the issue and sale of bonds until some definite plan for obtaining water has been adopted, or that it intended that bonds might be issued and sold, and the money left in the hands of the directors, or in the treasury of the company, for an indefinite time which might reach into months or years.

If the order of the board of directors, calling the election for the bonds, must adopt and specify some particular purpose or project for which the bonds are to be issued, as we hold, it follows logically, as a matter of course, that the directors could not entirely abandon that project, upon which the land owners had voted the bonds, and issue bonds for the purpose of developing some other and entirely different project, entirely foreign to the one adopted at the time of the election.

We hold, therefore, that under this statute the board of directors in calling the election must specify in a general way the project upon which the bonds are to be sold, and, having adopted that project, they cannot entirely abandon it and sell bonds to finance some other and totally different plan than the one voted on.

It is urged on behalf of respondent that our statute is a re-enactment of the Wright statute in California, adopted in 1887, and to which we have already referred, and that before the passage of our law the Supreme Court of California had construed that act and held that it was unnecessary for the resolution of the board of directors to point out or specify any particular project in calling the election upon the bonds, and that in adopting the California law we have adopted it as construed by the California court, under the well-known rule that, where a statute copied from another state is adopted by our legislature, it adopts with it any construction of the legislation, which had been given by the courts of the state, from which the same was adopted.

There are two reasons why this rule does not compel the adoption of the construction contended for on behalf of the board of directors, in this case.

5. In the first place, Section 19 of our statute, already quoted, is not copied from the California statute. Section 15 of the Wright Act, which was the section controlling the issuance of bonds, was as follows:

"For the purpose of constructing necessary irrigating canals and works and acqiuring the necessary property and rights therefor, and otherwise carrying out the provisions of this Act, the Board of Directors of any such district must, as soon after such district has been organized as may be practicable, estimate and determine the amount of money necessary to be raised, and shall immediately thereupon call a special election, at which shall be submitted to the electors of such district possessing the qualifications prescribed by this Act, the question whether or not the bonds of said district shall be issued in the amount so determined. * * "

By comparing this section with Section 19 of our own act, already quoted, it will be seen at once that there is a very substantial difference in the wording of the two sections, so much so that the rule invoked concerning statutes, copied literally from the statutes of another state, cannot apply. Neither do we think that the California decisions, taken as a whole, support the construction of the Wright Act, urged by the respondent herein.

It is true that in *Modesto Irr. Co.* v. *Tregea,* 88 Cal. 334 (26 Pac. 237), one department of the Supreme Court of California, did use the language quoted in the brief of the respondent, and among other things, said:

"The authority to issue bonds is wholly independent of the source of supply of water or any plans for obtaining it."

Which is the language upon which particular stress is placed in the brief of respondent in this case. But,

when the same question came before the court in banc, in *Cullen* v. *Glendora Water Co.,* 113 Cal. 503 (45 Pac. 822), the court held directly that it was necessary that a definite plan *should* be adopted before the election upon the bonds could be called, and disapproved the previous language relied upon by the respondent in this case, saying:

"Counsel for respondent contends that this question has already been decided in their favor in the case of *Board* v. *Tregea,* 88 Cal. 357 (26 Pac. 237), where the following language was used by the court: 'The authority to issue bonds is wholly independent of the source of supply of water, or any plans for obtaining it.' This language was not very happily chosen, and taken in its largest sense, for universal application, is misleading."

It is true that the court in the latter case attempts to reconcile its decision with the decision in the Tregea case, upon the ground that in the Tregea case there was only a modification of the previous plan. But we think the latter case cuts all the heart out of the former, and leaves nothing which could logically support the construction contended for by the respondent herein, even if the statutes were alike.

In *Willow Spring Irr. Dist.* v. *Wilson,* 74 Neb. 269, 272 (104 N. W. 165, 167), the Supreme Court of Nebraska, in construing a statute identical with the Wright Act, held that there must be definite plans prepared by an engineer, in order to sustain an election authorizing the issuance and sale of bonds, saying:

"The object of the statute under consideration was undoubtedly to allow the people of the district to examine and know the plan of the proposed improvement, and the estimated cost thereof, before they incurred the burden of the indebtedness necessary to complete the proposed works."

6. It is argued that the change from the language of our act of 1911 (Laws of 1911, page 378), to that of the act of 1917 supports respondents' construction, but we think there is nothing in the change which indicates an intention on the part of the legislature to authorize the directors to call a bond election, without adopting any plan or project for the bringing in of water. On the contrary, we think that, while the language of the act of 1911 was more explicit in that regard than the language of the later act, yet the later act, when fairly construed, still provides that the bond election must only be called with reference to some general purpose or project, and cannot be left entirely up in the air, with power to the district to issue and sell bonds, without reference to any purpose or plans and without ascertaining whether there is any source from which water for irrigation can be obtained. If any such a revolutionary change had been intended by the legislature, we think it would have indicated it in plain words, and the fact that it did not say so, but, on the contrary limited such authorization of bonds to "any purpose" selected by the order of the directors, makes some definite purpose just as necessary to the issuance of bonds as it was under the old act.

7. We must not be understood as holding that every detail of a project must be set forth in the order of the court calling the election, or that anything more than a general plan or project is required. Neither are we holding that the plan or project adopted cannot be modified or changed in any particular, or that such plans cannot be added to or developed if that shall become necessary.

8. In this case the action of the board of directors, calling the election, was by resolution which appears to have been as follows:

"Resolved that for the purpose of providing a system for the irrigation of the district this board hereby adopts the project known as the Big Butte Project, in accordance with the report, specifications, and estimates submitted to the board by its engineers.

"Resolved that for the purpose of defraying the expense of the construction and installation of a system for irrigating the district, and to provide for the payment of the first year's interest on bonds, bonds be issued by the district to the amount of $1,500,000.
* *

"Resolved that an election shall be held on the 28th day of September, 1918, to determine whether bonds to the amount of $1,500,000, shall be issued for the purpose of constructing and installing a system for the irrigation of the District, in accordance with the provisions of Chapter 357 of the General Laws of Oregon for 1917."

Whether this resolution is construed as declaring a definite project upon which the authorization of bonds was submitted to the voters, or not the result is equally fatal to the authorization of the bonds. If its intent was not to adopt any particular project for the bringing in of water, then it was not sufficient in the first instance, as before shown; and, if it did tie the election up to the particular project, then the board of directors had no authority to abandon the same and proceed to sell bonds for an entirely different project from the one upon which the people had voted.

It follows that the proceedings of the district in the matter of its organization and the election of its officers be confirmed; but the proposed action of the board of directors in selling bonds for a different project than the one voted upon is not confirmed, but is held to be illegal.

9. It is not necessary to decide, and we do not find in the record sufficient to justify us in deciding, whether the action of the board of directors in eliminating the 8,500 acres from the irrigation district was valid and effectual. There is no doubt that the act of the legislature provides ample authority for such elimination, if the proper steps are taken and the proper notice given. But it is necessary that proper notice shall be given by publication, as provided by the act, and that every step which the act requires for such elimination must be carefully followed to make the elimination valid.

No stipulation of the parties who appeared in the cause, and no judgment based upon such stipulation, as between them, could be binding upon the other land owners in the district, who did not appear, if no such notice, as required by law, was given.

The proceedings in relation to the attempted elimination are not presented by the petition for confirmation, and we find nothing in the record upon which we can decide whether the requisite notice was given or not. If such notice was given, and the law was complied with in every step leading up to such elimination, then no one could complain since every land owner had received notice and an opportunity to be heard, if he desired to object. But if these notices were not given, as required by the statute, then it would be better to take steps to have such eliminations as are necessary carefully made, in accordance with the statute, before another election is called.

The decree of the court below is affirmed as to that portion confirming the proceedings of the County Court and of the district and board of directors organizing the district and electing its officers, and modified and reversed as to that portion confirming

and authorizing the sale of the bonds for the purpose of constructing and developing the Little Butte Creek project.                    AFFIRMED AS MODIFIED.

BURNETT and BENSON, JJ., did not sit in this case.